Gregory N. Karasik (SBN 115834)
greg@karasiklawfirm.com
**Karasik Law Firm**
11835 W. Olympic Blvd. Ste. 1275
Los Angeles, CA 90064
Tel (310) 312-6800
Fax (310) 943-2582

Dennis F. Moss (SBN 77512)
dennisfmoss@yahoo.com
**Spiro Moss LLP**
11377 W. Olympic Boulevard, 5th Floor
Los Angeles, California 90064-1683
Tel.: (310) 235-2468
Fax: (310) 235-2456

Alexander I. Dychter (SBN 234526)
alex@dychterlaw.com
**Dychter Law Offices, APC**
625 Broadway, Suite 600
San Diego, California 92101
Tel: (619) 487-0777; Fax: (619) 330-1827

Attorneys for Plaintiff
HOWARD DAVID PROVINE

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD DAVID PROVINE, individually and on behalf of other persons similarly situated, | Case No. CV 11-00903 SI |
| | CLASS ACTION |
| Plaintiff, | **PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| vs. | |
| OFFICE DEPOT, INC. and DOES 1 through 10, | |
| | Date: March 2, 2012 |
| Defendants. | Time: 9:00 a.m.<br>Ctrm: 10 – 19th Floor |

Please take notice that, on March 2, 2012, at 9:00 a.m. or as soon thereafter as counsel may be heard, in Courtroom 10 of the United States Courthouse, located at 450 Golden Gate Avenue, San Francisco, California, plaintiff Howard David Provine ("Plaintiff") will and hereby does move the Court for an order granting class certification with respect to the first, second, third and fourth claims for relief asserted by Plaintiff in the Second Amended Complaint against defendant Office Depot, Inc.

("Defendant"). Specifically, Plaintiff moves for an order providing that:

1. The Class shall consist of the Overtime Wages Class, Wage Statement Class, Restitution Class, and Unpaid Final Wages Class, defined as follows:

**Overtime Wages Class**: All persons who, at any time since January 19, 2008, worked in California as a non-exempt employee of Defendant and earned a Bravo Award bonus for a month in which the employee worked more than eight hours in a workday or more than forty hours in a workweek.

**Wage Statement Class**: All persons who, at any time since January 19, 2010, worked in California as a non-exempt employee of Defendant and earned a Bravo Award bonus for a month in which the employee worked more than eight hours in a workday or more than forty hours in a workweek.

**Restitution Class**: All persons who, at any time since the January 19, 2007, worked in California as a non-exempt employee of Defendant and earned a Bravo Award bonus for a month in which the employee worked more than eight hours in a workday or more than forty hours in a workweek.

**Unpaid Final Wages Class**: All persons whose employment with Defendant ended at any time since January 19, 2008 who worked in California as a non-exempt employee of Defendant and earned a Bravo Award bonus for a month in which the employee worked more than eight hours in a workday or more than forty hours in a workweek.

2. Plaintiff shall be appointed as the representative for the Class; and

3. Plaintiff's counsel of record, Gregory N. Karasik of Karasik Law Firm and Alexander I. Dychter, of Dychter Law Offices, APC, shall be appointed as counsel for the Class.

Plaintiff's motion for class certification is made on the grounds that this case satisfies the following requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure:

a. The numerosity requirements of Rule 23(a)(1) is satisfied because the class is so numerous that joinder of all members is impracticable;

b. The commonality requirement of Rule 23(a)(2) is satisfied because there are questions of law or fact common to the class;

2

c.     The typicality requirement of Rule 23(a)(3) is satisfied because Plaintiff's claims are typical of the claims of the class;

d.     The adequate representation requirement of Rule 23(a)(4) is satisfied because Plaintiff will fairly and adequate protect the interests of the class; and

e.     The requirements of Rule 23(b)(3) are satisfied because questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods (if any) for the fair and efficient adjudication of the controversy.

Plaintiff's motion is based on this Notice; the attached Memorandum of Points and Authorities; the Declarations of Gregory N. Karasik, Alexander I. Dychter and Howard David Provine submitted herewith; all the other papers and pleadings on file in this action; any oral argument on the motion allowed by the Court; and upon any other matters the Court may consider in connection with the motion.

Dated: January 6, 2012

KARASIK LAW FIRM
DYCHTER LAW OFFICES, APC


By:    /s/ Gregory N. Karasik
       Gregory N. Karasik
       Attorneys for Plaintiff

1  Gregory N. Karasik (SBN 115834)
   greg@karasiklawfirm.com
2  **Karasik Law Firm**
   11835 W. Olympic Blvd. Ste. 1275
3  Los Angeles, CA 90064
   Tel (310) 312-6800
4  Fax (310) 943-2582

5  Dennis F. Moss (SBN 77512)
   dennisfmoss@yahoo.com
6  **Spiro Moss LLP**
   11377 W. Olympic Boulevard, 5th Floor
7  Los Angeles, California 90064-1683
   Tel.: (310) 235-2468
8  Fax: (310) 235-2456

9  Alexander I. Dychter (SBN 234526)
   alex@dychterlaw.com
10 **Dychter Law Offices, APC**
   625 Broadway, Suite 600
11 San Diego, California 92101
   Tel: (619) 487-0777; Fax: (619) 330-1827

12 Attorneys for Plaintiff
   HOWARD DAVID PROVINE
13

14                    UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

16 | HOWARD DAVID PROVINE, individually | Case No. CV 11-00903 SI |
   | and on behalf of other persons similarly | |
17 | situated, | CLASS ACTION |

18 | Plaintiff, | **MEMORANDUM OF POINTS AND** |
   | | **AUTHORITIES IN SUPPORT OF** |
19 | vs. | **PLAINTIFF'S MOTION FOR CLASS** |
   | | **CERTIFICATION** |
20 | OFFICE DEPOT, INC. and DOES 1 through | |
   | 10, | |
21 | | |
   | Defendants. | Date: March 2, 2012 |
22 | | Time: 9:00 a.m. |
   | | Ctrm: 10 – 19th Floor |
23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTS ............................................................................................................................... 1

ARGUMENT ...................................................................................................................... 3

I.     THE REQUIREMENTS OF RULE 23(a) ARE SATISFIED ........................................ 3

    A.     Numerosity ........................................................................................................ 3

    B.     Commonality ..................................................................................................... 5

    C.     Typicality .......................................................................................................... 6

    D.     Adequate Representation ................................................................................... 7

II.    THE REQUIREMENTS OF RULE 23(b)(3) ARE SATISFIED ................................... 7

    A.     Predominance Of Common Questions................................................................ 7

    B.     Superiority ....................................................................................................... 12

CONCLUSION................................................................................................................. 14

# **TABLE OF AUTHORITIES**

<u>Cases</u>

*Adoma v. University of Phoenix, Inc.*
   (E.D. Cal. 2010) 270 F.R.D. 543 .................................................................................... 5, 6, 9, 10

*Aguiar v. Cintas Corporation No. 2*
   (2006) 144 Cal.App.4th 121 ....................................................................................................... 4

*Arias v. Superior Court*
   (2009) 46 Cal.4th 969 ................................................................................................................. 1

*Armstrong v. Davis*
   (9th Cir. 2001) 275 F.3d 849 ..................................................................................................... 5

*Baldwin & Flynn v. Nat'l Safety Associates*
   (N.D. Cal. 1993) 149 F.R.D. 598................................................................................................ 3

*Bell v. Farmers Ins. Exchange*
   (2004) 115 Cal.App.4th 715 .................................................................................................... 12

*Blackie v. Barrack*
   (9th Cir. 1975) 524 F.2d 891 ................................................................................................... 11

*Boggs v. Divested Atomic Corp.*
   (S.D. Ohio 1991) 141 F.R.D. 58 .............................................................................................. 13

*Cal. Rural Assistance, Inc. v. Legal Servs. Corp.*
   (9th Cir. 1990) 917 F.2d 1171 ................................................................................................. 6

*Davis v. Morris*
   (1940) 37 Cal.App.2d 269 ....................................................................................................... 11

*Eisen v. Carlisle & Jacquelin*
   (1974) 417 U.S. 156.................................................................................................................... 3

*Ellis v. Costco Wholesale Corp.*
   (9th Cir. 2011) 657 F.3d 970 ................................................................................................... 5

*Hanlon v. Chrysler Corp.*
   (9th Cir. 1998) 150 F.3d 1011 .......................................................................................... 5, 6, 7

*Hanon v. Dataproducts Corp.*
   (9th Cir. 1992) 976 F.2d 497 ................................................................................................... 6

*In re Activision*
   (N.D. Cal. 1985) 621 F.Supp. 415 ............................................................................................ 5

*In re Static Random Access Memory Antitrust Litigation*
   (N.D. Cal. 2009) 264 F.R.D. 603.............................................................................................. 4

*In re Tableware Antitrust Litigation*
   (N.D. Cal. 2007) 241 F.R.D. 644............................................................................................... 4

MOTION FOR CLASS CERTIFICATION

*Lee v. Dynamex, Inc.*
(2008) 166 Cal.App.4th 1325 ................................................................ 4
*Lerwill v. Inflight Motion Pictures, Inc.*
(9th Cir. 1987) 552 F.2d 507 ................................................................ 12
*Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*
(9th Cir. 2001) 244 F.3d 1152 .......................................................... 7, 12
*McKenzie v. Federal Exp. Corp.*
(C.D. Cal. 2011) 275 F.R.D. 290 ...................................................... 6, 10
*Nguyen v. Baxter Healthcare Corp.*
(C.D. Cal. 2011) 275 F.R.D. 59 ............................................................ 10
*Norris-Wilson v. Delta-T Group, Inc.*
(S.D. Cal. 2010) 270 F.R.D. 596 .......................................................... 10
*Ortega v. J.B. Hunt Transport, Inc.*
(C.D. Cal. 2009) 258 F.R.D. 361 ...................................................... 6, 10
*Perez v. Safety-Kleen Systems, Inc.*
(N.D. Cal. 2008) 253 F.R.D. 508 .......................................................... 10
*Soto v. Superior Communications, Inc.*
(S.D. Cal. 2011) 2011 WL 6325906 ........................................................ 5
*Valentino v. Carter-Wallace*
(9th Cir. 1996) 97 F.3d 1227 .............................................................. 12
*Wal-Mart Stores, Inc. v. Duke*
(2011) 131 S.Ct. 2541 ...................................................................... 5
*Walters v. Reno*
(9th Cir. 1998) 145 F.3d 1032 .............................................................. 7
*Zinzer v. Accufix Research Institute, Inc.*
(9th Cir. 2001) 253 F.3d 1188 .............................................................. 7

Federal Rules Of Civil Procedure

Rule 23 .................................................................................... 1, 3
Rule 23(a) ................................................................................ 5, 14
Rule 23(a)(1) ............................................................................. 3, 4
Rule 23(a)(2) ............................................................................ 5, 13
Rule 23(a)(3) ................................................................................. 6
Rule 23(a)(4) ................................................................................. 7
Rule 23(b)(3) ............................................................. 7, 11, 12, 13, 14

Federal Regulations

29 C.F.R. Section 778.211 .................................................................. 9

<u>State Statutes</u>

Labor Code

Section 203............................................................................................................................... 11
Section 226............................................................................................................................... 10
Section 226(a) ...................................................................................................................... 9, 10
Section 226(e) ................................................................................................................ 9, 10, 14
Section 510................................................................................................................................. 8

Unfair Competition Law................................................................................................... 10, 14

<u>Miscellaneous</u>

DLSE Enforcement Policies and Interpretations Manual

Section 49.1.2............................................................................................................................. 8
Section 49.1.2.1.......................................................................................................................... 8
Section 49.1.2.4.......................................................................................................................... 8
Section 49.1.2.4(3)..................................................................................................................... 8

MOTION FOR CLASS CERTIFICATION

1

## INTRODUCTION

Plaintiff asserts five claims for relief against Defendant based on Defendant's alleged failure to comply with California wage and hour laws: Failure to Pay Overtime Wages, Failure to Provide Accurate Wage Statements, Unfair Competition, Failure to Pay All Wages Owed Upon Termination, and Civil Penalties under PAGA. All of Plaintiff's claims are premised on the central allegation that Defendant was required to factor into the calculation of the regular rate of pay for non-exempt employees, for the purposes of determining the amount of overtime wages owed to them, amounts they received for a Bravo Award bonus. There is no dispute in this case that Defendant did not factor Bravo Award bonuses into the calculation of the regular rate of pay. The primary issue in this case is a simple legal question: was Defendant required to do so?

Plaintiff now moves for class certification with respect to his claims for Failure to Pay Overtime Wages, Failure to Provide Accurate Wage Statements, Unfair Competition and Failure to Pay All Wages Owed Upon Termination. (Plaintiff does not seek class certification of his claim for Civil Penalties under PAGA because that claim may be pursued as a representative action on behalf of aggrieved employees without class certification. *See, Arias v. Superior Court* (2009) 46 Cal.4th 969, 981-87). As discussed below, the evidence clearly demonstrates that all the requirements for a class action under Rule 23 of the Federal Rules of Civil Procedure are met in this case. Determining in one class action lawsuit, on behalf of the thousands of employees who received Bravo Award bonuses, whether or not Defendant was required to factor Bravo Award bonuses into their regular rate of pay for the purposes of computing their overtime wages, would be far more economical than litigating the same legal issue over and over again in thousands of identical lawsuits.

## FACTS

Since at least January 2007, the onset of the alleged class period in this case, Defendant has implemented a Bravo Award Program. (Hale Depo. 16:2-5).[1] Bravo Awards are intended to recognize employees for superior work performance during a month. (Hale Depo. 29:1-30:4). According to

---

[1] Cited excerpts from the deposition of Lori Hale, Defendant's Regional Human Resources Director (Hale Depo. 9:6-9), are attached as Exhibit A to the Declaration of Gregory N. Karasik.

1

1  Defendant's "People Manual," all non-management associates of Defendant are eligible for a Bravo

2  Award. (Hale Depo. 26:7-27:1; Ex. 5).

3      Although there have been some minor differences in various written iterations of the Bravo

4  Award Program throughout the class period, it has fundamentally remained the same. Under the Bravo

5  Award Program, a manager (and sometimes a non-manager) can present a Bravo Award Card to any

6  non-management associate for superior work performance. Associates may receive an unlimited

7  number of Bravo Award Cards during any given month. At the end of the month (or occasionally at

8  the beginning of the next month), a drawing is held among the associates who have earned Bravo

9  Award Cards. The winner of the drawing receives a Bravo Award of $50, which is paid on the

10  employee's next paycheck. (Hale Depo. 15:3-18; 16:12-17:2; 20:23-22:7; 23:25-24:13; 25:19-22;

11  30:23-31:23; 35:22-36:3; 44:12-45:1; 45:4-46:6; Exs. 2-5). The amount of the Bravo Award is always

12  $50 (subject to withholding of taxes), so any associate who participates in the drawing for a Bravo

13  Award knows that, if he or she wins, she will receive $50. (Hale Depo. 37:13-38:4).

14      Defendant admits that it does not factor Bravo Awards into the calculation of an employee's

15  regular rate of pay for the purposes of computing overtime. (Hale Depo. 48:19-25; 50:1-2; 51:14-18;

16  51:24-52:2). As testified to by Defendant's Regional Human Resources Director:

17      Q.      MR. KARASIK: But I think what's not in dispute is that the amount of the

18      Bravo Award is not factored into the calculation of the regular rate; is that correct?

19      A.      Yes.

20  (Hale Depo. 51:14-18).

21      It is likewise undisputed that Defendant does not pay an overtime premium on the Bravo

22  Award itself. For example, Plaintiff received a Bravo Award of $50 for the month of July 2010, which

23  was paid to him on the first paycheck of August 2010. (Provine Decl. ¶ 2; Ex. 1). Even though

24  Plaintiff worked overtime hours during the month of July 2010, the Bravo Award remained $50. As

25  reflected by his August 6, 2010 wage statement, Plaintiff did not receive an overtime premium for the

26  Bravo Award and Defendant did not factor the Bravo Award into the calculation of Plaintiff's regular

27  rate of pay for the purposes of computing the amount of overtime wages earned by Plaintiff during the

28  July 2010 pay period encompassed by the August 6, 2010 wage statement. (Provine Decl. ¶ 2; Ex. 1).

2

**ARGUMENT**

When a district court is presented with a motion for class certification, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin* (1974) 417 U.S. 156, 178. Accordingly, a district court ruling on a certification motion "may not require plaintiffs to make a preliminary proof of their claim; it requires only sufficient information to form a reasonable judgment." *Baldwin & Flynn v. Nat'l Safety Associates* (N.D. Cal. 1993) 149 F.R.D. 598, 600. As demonstrated below, all the requirements for class certification are met in this case.

## I.     THE REQUIREMENTS OF RULE 23(a) ARE SATISFIED

### A.     Numerosity

Under Rule 23(a)(1), a class action may be maintained where "the class is so numerous that joinder of all members is impracticable." Here, each of the four classes sought to be certified by Plaintiff consists of thousands of Bravo Award winning employees. According to Defendant, as of July 30, 2011 there were:

- 5,940 Bravo Awards since January 2007 (corresponding to a four year class period);
- 4,978 Bravo Awards since January 2008 (corresponding to a three year class period); and
- 2,672 Bravo Awards since January 2010 (corresponding to a one year class period).

(Supplemental Responses to Interrogatories, p. 4 [Karasik Decl. ¶ 3; Ex. B]).[2]

Although Defendant declined to state in response to Plaintiff's interrogatories exactly how many class members there are, on the grounds that determining which Bravo Award winners had worked overtime during the month for which they received a Bravo Award would be unduly burdensome, Defendant stipulated to numerosity for the purposes of class certification in exchange for Plaintiff's agreement to accept supplemental interrogatory responses merely stating the number of Bravo Award winners. (Karasik Decl. ¶ 4; Hale Depo. 52:5-53:3). In accordance with its stipulation, Defendant cannot dispute that Plaintiff has established numerosity under Rule 23(a)(1).

---

[2] Defendant's interrogatory responses state the number of Bravo Awards to retail store employees. Based on deposition testimony indicating that the Bravo Award Program also applied to other employees in Defendant's business services and/or supply chain divisions (Hale Depo. 27:6-28:16), the classes Plaintiff seeks to certify are not limited to retail store employees.

Although Rule 23(a)(1) does not expressly require an ascertainable class, some federal courts have found the existence of an ascertainable class to be an implicit requirement for class certification subsumed within Rule 23(a)(1). Having stipulated to numerosity, Defendant cannot oppose class certification on the grounds that an ascertainable class does not exist. But even if Defendant were not foreclosed from making such an argument by virtue of its stipulation to numerosity, any such argument would have no merit. An ascertainable class exists in this case because each class is defined in terms of objective characteristics that makes class membership verifiable by class members themselves. The ability of class members to determine whether or not they are class members suffices to establish an ascertainable class. *See, e.g., In re Tableware Antitrust Litigation* (N.D. Cal. 2007) 241 F.R.D. 644, 651 (ascertainable class where consumers could determine by reading class definition whether or not they were included in the class); *In re Static Random Access Memory Antitrust Litigation* (N.D. Cal. 2009) 264 F.R.D. 603, 608 (class ascertainable where class members can identify themselves).

Here, Bravo Award winning employees, who know whether or not they worked overtime during a month for which they received a Bravo Award, can determine for themselves simply by reading the class definitions whether are not they are class members. Since Defendant acknowledged that it has the ability to identify which employees won Bravo Awards (Hale Depo. 54:4-8), a notice can be sent to all Bravo Award winners asking them to verify whether or not they are members of the class, and a notice to all Bravo Award winners would necessarily encompass all class members.

In addition, while Defendant does not want to have to spend any time or money doing so, Defendant can in fact identify from its own employment records exactly which Bravo Award winning employees are class members. Defendant's Regional Human Resources Director admitted at deposition that, from the daily time entries recorded by employees on Defendant's workforce management system, Defendant can determine whether or not any employee worked any overtime hours during a month. (Hale Depo. 54:14-21). When the identity of class members can be determined from an employer's records, the requirement for the existence of an ascertainable class is satisfied. *See, e.g., Lee v. Dynamex, Inc.* (2008) 166 Cal.App.4th 1325, 1334 (basic parameters of class ascertainable through "company records"); *Aguiar v. Cintas Corporation No. 2* (2006) 144 Cal.App.4th 121, 136 (class members ascertainable from payroll records).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B.   **Commonality**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Although district courts are to conduct a "rigorous analysis" of each Rule 23(a) factor, the commonality requirement must be "construed permissively." *Ellis v. Costco Wholesale Corp.* (9th Cir. 2011) 657 F.3d 970, 981; *Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1019. *See also, Soto v. Superior Communications, Inc.* (S.D. Cal. 2011) 2011 WL 6325906, at *3 (citing *Hanlon*). As explained recently by the Supreme Court, commonality under Rule 23(a)(2) requires that the claims of class members "must depend on a common contention" . . . "that is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Duke* (2011) 131 S.Ct. 2541, 2551.

Here, all class members make a common central contention, i.e., that Defendant was required to factor Bravo Awards into the calculation of their regular rate of pay. Since there is no factual dispute about how the Bravo Award Program operates, whether or not Defendant was required to factor Bravo Awards into the calculation of the regular rate of pay presents a purely legal question that is clearly capable of classwide resolution. *See, e.g., Adoma v. University of Phoenix, Inc.* (E.D. Cal. 2010) 270 F.R.D. 543, 552 (court certified plaintiff's claim that educational benefits were improperly excluded from the regular rate of pay because "this is primarily a legal question"). This case falls squarely within the standard for determining commonality established by the Supreme Court in *Wal-Mart*, under which a common contention satisfies the commonality requirement under Rule 23(a)(2) when "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S.Ct. at 2551.

Whatever differences there may be in exactly how many times a class member won a Bravo Award or the amount of their unpaid overtime wages does not diminish the commonality of the central legal issue in this case that is determinative of Defendant's liability. It is well settled that differences in the amount of damages to which each class members is entitled "are insufficient to defeat class certification." *In re Activision* (N.D. Cal. 1985) 621 F.Supp. 415, 428. Nor would any inconsistencies in the operation of the Bravo Award Program matter. Where a lawsuit challenges a company policy, "individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality." *Armstrong v. Davis* (9th Cir. 2001) 275 F.3d 849, 868.

### C. **Typicality**

Rule 23(a)(3) requires that the representative plaintiff have claims "typical of the claims . . . of the class." Representative claims are typical "if they are reasonably co-extensive with those of absent class members; they need not be identical." *Hanlon*, 150 F.3d at 1020. In other words, named plaintiffs need not be "identically situated" with other class members. "It is enough if their situations share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *Cal. Rural Assistance, Inc. v. Legal Servs. Corp.* (9th Cir. 1990) 917 F.2d 1171, 1175.

Typicality refers to the "nature of the claim . . . of the class representative, and not to the specific facts from which it arose." *Hanon v. Dataproducts Corp.* (9th Cir. 1992) 976 F.2d 497, 508. The test of typicality is thus "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ibid.*

Here, Plaintiff and all other class members allege the same principal injury – the failure to receive all the overtime wages owed to them for the overtime hours worked during a month for which they won a Bravo Award. Based on this principal injury, members of the Wage Statement Class allege the same derivative injury from inaccurate wage statements, and members of the Unpaid Final Wages Class allege the same derivative injury from the failure to receive all wages owed to them upon termination. All class members thus seek the same kind of relief, i.e. damages under the Labor Code, restitution under the unfair competition law, and civil penalties. Like other wage and hour class actions, this lawsuit is based on an employer's policy that is not unique to any particular employee, but affects equally a large number of similarly situated employees. *See, e.g., Adoma v. University of Phoenix, Inc.* (E.D. Cal. 2010) 270 F.R.D. 543 (court certified for class treatment the plaintiff's claim that educational benefits were improperly excluded from the regular rate of pay); *McKenzie v. Federal Exp. Corp.* (C.D. Cal. 2011) 275 F.R.D. 290 (court certified for class treatment claims alleging defects in wage statements); *Ortega v. J.B. Hunt Transport, Inc.* (C.D. Cal. 2009) 258 F.R.D. 361 (court certified for class treatment plaintiff's claims that drivers not paid all minimum wages owed to them, not paid all wages upon termination, and subjected to unfair business practices).

1

### D.   Adequate Representation

2       Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

3  interests of the class."  Adequate representation turns on whether the named plaintiff and his counsel

4  "have any conflicts of interest with other class members" and whether the named plaintiff and his

5  counsel will "prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020.  *See*

6  *also*, *Walters v. Reno* (9th Cir. 1998) 145 F.3d 1032, 1046 (class representatives adequate when they

7  were "interested and involved in obtaining relief" despite defendants' claim that representatives had

8  committed fraud).

9       In this case, there are no conflicts of interest between Plaintiff and other class members.

10  Plaintiff understands the nature of his claims, his role as class representative, and the risks of litigation;

11  and Plaintiff is willing to participate in this lawsuit to whatever extent necessary to vindicate the rights

12  of absent class members Plaintiff seeks to represent. (Provine Decl. ¶ 3).  Likewise, there are no

13  conflicts between class members and Plaintiff's counsel.  Defendant cannot dispute that Plaintiff's

14  counsel, who have substantial class action experience, can adequately represent the class. *See, Local*

15  *Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.* (9th Cir. 2001) 244 F.3d

16  1152, 1162 (adequacy established by mere that that counsel were experienced practitioners.  The

17  declarations submitted by Plaintiff's counsel demonstrate their ability to pursue this case vigorously

18  and fairly represent the interests of all class members.   (Karasik Decl. ¶ 5-8; Dychter Decl. ¶ 4-6).

19  ## II.   THE REQUIREMENTS OF RULE 23(b)(3) ARE SATISFIED

20       Rule 23(b)(3) allows class certification when "questions of law or fact common to the members

21  of the class predominate over any questions affecting only individual members" and a class action "is

22  superior to other available methods for the fair and efficient adjudication of the controversy."  In this

23  case, the requirements of both predominance and superiority are satisfied.

24

### A.   Predominance Of Common Questions

25       The predominance inquiry focuses on whether the class is "sufficiently cohesive to warrant

26  adjudication by representation." *Culinary/Bartender Trust Fund*, 244 F.3d at 1162.  Central to this

27  question is the "the notion that the adjudication of common issues will help achieve judicial economy."

28  *Zinzer v. Accufix Research Institute, Inc.* (9th Cir. 2001) 253 F.3d 1188, 1189.

1    As set forth below, the predominance requirement is satisfied with respect to each of the four

2  claims Plaintiff seeks to certify for class treatment. With respect to each claim, all of the issues

3  determinative of Defendant's liability are common, and there are no individual liability issues that

4  could possibly outweigh the common issues or militate against certification.

5  Overtime Claims

6    Plaintiff' claims for unpaid overtime wages hinge on a single, common, issue: whether or not

7  Bravo Awards must be factored into the calculation of an employee's regular rate of pay for the

8  purposes of computing overtime compensation. Labor Code Section 510 requires payment of an

9  overtime premium for overtime hours worked based on an employee's regular rate of pay. As

10  explained in the Enforcement Policies and Interpretations Manual promulgated by the Division of

11  Labor Standards Enforcement, an employee's regular rate of pay "shall be deemed to include all

12  remuneration for employment" paid to an employee. (DLSE Manual § 49.1.2). For example, a

13  production bonus must be considered to determine the amount of an employee's regular rate of pay.

14  (DLSE Manual § 49.1.2.1).

15    The DLSE Manual explains that "In determining what payments are to be included or excluded

16  from the regular rate of pay, California law adheres to the standards adopted by the U.S. Department of

17  Labor to the extent those standards are consistent with California law." DLSE Manual § 49.1.2. In

18  this regard, under both California and federal law certain kinds of payments may be excluded from

19  determining the regular rate. *See*, DLSE Manual § 49.1.2.4. Thus, the sole issue on which

20  Defendant's liability for unpaid overtime wages depends is whether or not Bravo Awards fall within

21  any of the exceptions to the general rule that deems the regular rate to include "all remuneration."

22    Plaintiff contends that no exception applies to Bravo Awards. Under Section 49.1.2.4(3) of the

23  DLSE Manual, sums paid in recognition for services performed over a defined course of time may not

24  be excluded from the regular rate unless both the fact of payment and amount of payment "are

25  determined at the sole discretion of the employer at or near the end of the period and not pursuant to

26  any prior contract, agreement, or promise causing the employee to expect such payments regularly."

27  The fixed $50 amount of Bravo Awards promised to employees if they win the monthly drawing, as set

28  forth in Defendant's People Manual, does not fall within the exception for "discretionary" payments.

8

1    Indeed, Plaintiff maintains that Bravo Awards paid by Defendant fall squarely within the ambit

2  of promised bonuses not excluded under the federal wage and hour regulations incorporated into

3  California law.  29 C.F.R. § 778.211 provides:

4    Attendance bonuses, individual or group production bonuses, *bonuses for quality and accuracy*

5    *of work*, bonuses contingent upon the employee's continuing in employment until the time the

6    payment is to be made and the like fall into this category.  They must be included in the regular

7    rate of pay.  (emphasis added).

8    It remains to be seen what kind of arguments Defendant may make to dispute that Bravo

9  Awards bonuses must be included in the calculation of an employee's regular rate of pay.  Regardless,

10  whether or not a Bravo Award bonus awarded to an employee is or is not required to be included in

11  calculating the employee's regular rate of pay is a common question the answer to which will be the

12  same for all class members.  As was the case in *Adoma v. University of Phoenix, Inc.* (E.D. Cal. 2010)

13  270 F.R.D. 543, 552, where the court certified for class treatment the plaintiff's claim that educational

14  benefits were improperly excluded from the regular rate of pay, "this is primarily a legal question."

15  Wage Statement Claims

16    Labor Code Section 226(e) provides that an employee suffering injury as a result of a knowing

17  and intentional failure by an employer to comply with Section 226(a) is liable for civil penalties.

18  Whether or not Defendant is liable for civil penalties under Section 226(e) in this case turns on

19  whether or not Plaintiff can establish each of the three elements for liability under Section 226(e).

20  With respect to each element, the determinative issue is common for all class members.

21    First, Plaintiff must establish that wage statements provided to class members did not set forth

22  all the information required by Section 226(a), which includes the total amount of wages earned and all

23  applicable wage rates.  As explained above, it is undisputed that Defendant does not factor Bravo

24  Awards into the calculation of the regular rate of pay.  Thus, if Defendant was required to have done

25  so, at least one wage statement given to each class member would necessarily fail to set forth the

26  correct amount of overtime wages earned and/or the applicable overtime rate.  Whether or not wage

27  statements complied with Section 226(a) when employees received a Bravo Award for a month in

28  which they worked overtime can be determined on a common, class wide basis for all class members.

9

Second, Plaintiff must establish that non-compliance with Section 226(a) was "knowing and intentional." This element can be determined without the need for any individualized inquiries because Defendant is the entity who decided not to factor Bravo Awards into the calculation of the regular rate of pay. Not a single class member need be questioned or testify to establish that Defendant intended to not factor Bravo Awards into the calculation of the regular rate of pay or that Defendant knew that paychecks given to Bravo Award winners did not provide information about overtime wages or rates based on factoring Bravo Awards into the calculation of the regular rate of pay.

Third, Plaintiff must establish that class members suffered "injury" as a result of receiving non-complaint wage statements. In this regard, Plaintiff contends that all class members suffered from the same inability to determine, from the wage statements given to them by Defendant when they won Bravo Awards, the correct amount of overtime wages owed to them, and they thus had a resulting need to engage in discovery and mathematical calculations to determine exactly how much in overtime wages they were owed. Whether or not class members suffered a cognizable "injury" is clearly a common question that supports class certification.

Because cases involving claims for violation of Labor Code Section 226 are typically premised on wage statements prepared the same way for all employees, as is the case here, they are routinely certified for class treatment. *See, e.g., McKenzie v. Federal Exp. Corp.* (C.D. Cal. 2011) 275 F.R.D. 290; *Ortega v. J.B. Hunt Transport, Inc.* (C.D. Cal. 2009) 258 F.R.D. 361; *Norris-Wilson v. Delta-T Group, Inc.* (S.D. Cal. 2010) 270 F.R.D. 596; *Adoma v. University of Phoenix, Inc.* (E.D. Cal. 2010) 270 F.R.D. 543; *Nguyen v. Baxter Healthcare Corp.* (C.D. Cal. 2011) 275 F.R.D. 596; *Perez v. Safety-Kleen Systems, Inc.* (N.D. Cal. 2008) 253 F.R.D. 508. Plaintiff's claim for civil penalties under Section 226(e), which is no different from any other wage statement claim based on the employer's underlying failure to pay the correct amount of wages, should likewise be certified.

Derivative UCL Claim

Plaintiff's claim for restitution under the UCL is entirely derivative of Plaintiff's claim for unpaid overtime wages. For the same reasons Plaintiff's central claim for unpaid overtime satisfies the predominance requirement for class certification, so too does Plaintiff's derivative claim for restitution of unpaid overtime wages under the UCL.

1   Derivative Claim for Waiting Time Penalties

2          Plaintiff's claim for waiting time penalties under Labor Code Section 203 is also derivative of

3   Plaintiff's claim for unpaid overtime wages. As discussed above, whether or not Bravo Awards must

4   be included to determine the regular rate of pay is clearly a common legal issue that predominates over

5   individual issues. To recover waiting time penalties under Section 203, Plaintiff must also establish

6   that Defendant's failure to pay all wages upon termination was "willful." This too presents a common

7   issue because all that is required for willfulness under Section 203 is that "one intentionally fails or

8   refuses to perform an act that is required to be done." *Davis v. Morris* (1940) 37 Cal.App.2d 269, 274.

9   In *Davis*, the court explained that bad faith is not required to establish liability for waiting time

10  penalties under Section 203:

11          In civil cases the word "willful" as ordinarily used in courts of law, does not necessarily

12          imply anything blamable, or any malice or wrong to the other party, or perverseness or

13          moral delinquency, but merely that the thing done or omitted to be done, was done or

14          omitted intentionally. It amounts to nothing more than this: That the person knows what

15          he is doing, intends to do what he is doing, and is a free agent.

16  *Davis*, 37 Cal.App.2d at 274.

17          Plaintiff contends that Defendant knew what it was doing, and intended to do what it did, when

18  Defendant did not factor Bravo Awards into the calculation of the regular rate of pay. Even should

19  Defendant disagree, whether or not Defendant is liable for waiting time penalties turns on a common

20  issue that does not require any individualized inquiry.

21  Summary

22          Because all of the issues determinative of Defendant's liability in this case are common, and

23  there are no liability issues requiring individualized testimony or determination, common issues

24  necessarily predominate over individual issues. Indeed, the only individual issues in this case are the

25  amount of each class member's damages. In this regard, it is well established that "the amount of

26  damages is invariably an individual question and does not defeat class action treatment." *Blackie v.*

27  *Barrack* (9th Cir. 1975) 524 F.2d 891, 905. With respect to each of the four claims for which Plaintiff

28  seeks class certification, the requirement of predominance under Rule 23(b)(3) is satisfied.

### B. Superiority

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alternative methods for adjudicating the parties' claims. Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement. "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." *Culinary/Bartenders Trust Fund*, 244 F.3d at 1163. *See also, Valentino v. Carter-Wallace* (9th Cir. 1996) 97 F.3d 1227, 1235-36 ("a class action is a superior method for managing if no realistic alternative exists").

Here, there is no realistic alternative to a class action. A class action is superior to individual administrative proceedings before the California Labor Commissioner, who cannot even prosecute claims for violation of the unfair competition law such as those asserted by Plaintiff here. *See, Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715, 745-46. The only way for class members to pursue all of their claims in this case other than through a class action would be to file individual lawsuits. Since there are thousands of Bravo Award winners, individual lawsuits would clearly be an inefficient method. *See, Lerwill v. Inflight Motion Pictures, Inc.* (9th Cir. 1987) 552 F.2d 507, 512 (in certifying a class of employees seeking overtime, the court held that "[n]umerous individual actions would be expensive and time consuming"). As in *Culinary/Bartenders Trust Fund*, "this case involves multiple claims for relatively small sums" and a class action clearly serves as the only method that would "permit the plaintiffs to pool claims which would be uneconomical to litigate individually." *Id.,* 244 F.3d at 1163. *Culinary/Bartenders Trust Fund* clearly dictates the conclusion that the superiority requirements of Rule 23(b)(3) are satisfied here.

Consideration of the factors listed in Rule 23(b)(3) as "pertinent" to the superiority question bolster this conclusion. The factors are (a) the interest of members of the class individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commended by or against the members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (d) the difficulties likely to be encountered in the management of a class action. All four factors favor granting class certification here.

1      First, class members have no particular interest in individually controlling the prosecution of

2 separate actions. Most (if not all) class members will prefer the economies of time, effort and expense

3 afforded by allowing Plaintiff to pursue claims on their behalf. Because class treatment requires that

4 the interests of absent class members be protected by an adequate representative, class members (to the

5 extent they even know they have claims to begin with) have no reason to think that they must pursue

6 their claims individually in order to prosecute them adequately. And even if any had concerns about

7 Plaintiff's ability to prosecute the case, they could choose to opt out of the class. Those who choose to

8 remain in the class would obviously have no particular interest in maintaining a separate action.

9      Second, Plaintiff is not aware of any competing litigation against Defendant regarding the

10 violations of California law at issue.

11      Third, it is desirable to concentrate the issues in this forum because the parties reside in

12 California and Defendant is alleged to have violated California law at numerous locations in

13 California. Defendant has not moved to transfer venue for this case to another district, and would have

14 no basis for doing so.

15      Finally, management of this case as a class action presents no difficulties. To the contrary,

16 managing this case as a class action would be far less difficult than managing thousands of individual

17 cases brought by class members separately. Rather than introduce the same evidence about the Bravo

18 Award Program over and over again in thousands of identical trials, Plaintiff need only submit once

19 the documents produced by Defendant and the testimony elicited from Defendant's representatives that

20 supports Plaintiff's claims. One class action trial based on such common evidence will necessitate

21 fewer witnesses and be far simpler than thousands of individual lawsuits.

22      Ultimately, this case satisfies the superiority requirement under Rule 23(b)(3) because it simply

23 makes no sense to litigate common issues more than once and a class action is the only way to achieve

24 judicial economy. "It would be neither efficient nor fair to anyone, including defendants, to force

25 multiple trials to hear the same evidence and decide the same issues." *Boggs v. Divested Atomic Corp.*

26 (S.D. Ohio 1991) 141 F.R.D. 58, 67. For all the reasons Plaintiff's claims satisfy the requirements of

27 commonality under Rule 23(a)(2) and predominance under Rule 23(b)(3), Plaintiff's claims likewise

28 satisfy the requirement of superiority under Rule 23(b)(3).

1

## CONCLUSION

2      Plaintiff has established all the requirements for class certification under Rule 23(a) and Rule

3  23(b)(3). This Court should grant Plaintiff's motion for class certification in its entirety and certify

4  that Plaintiff may pursue as a class action (along with Plaintiff's representative claim for civil penalties

5  under PAGA that do not require certification) his claims for unpaid wages on behalf of the Overtime

6  Wages Class, his claims for civil penalties under Labor Code Section 226(e) on behalf of the Wage

7  Statement Class, his claims for restitution under the Unfair Competition Law on behalf of the

8  Restitution Class, and his claims for waiting time penalties on behalf of the Unpaid Final Wages Class.

9

10  Dated: January 6, 2012                              KARASIK LAW FIRM
                                                        DYCHTER LAW OFFICES, APC

11

12                                          By:    /s/ Gregory N. Karasik
                                                   Gregory N. Karasik
13                                                 Attorneys for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28