1   MORGAN, LEWIS & BOCKIUS LLP
    BARBARA J. MILLER, SBN 167223
2   barbara.miller@morganlewis.com
    JENNIFER L. BRADFORD, SBN 203871
3   jbradford@morganlewis.com
    JONATHAN C. ARNETT, SBN 255135
4   jarnett@morganlewis.com
    5 Park Plaza, Suite 1750
5   Irvine, CA  92614
    Telephone:    949.399.7000
6   Facsimile:     949.399.7001

7   Attorneys for Defendant
    OFFICE DEPOT, INC.

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  HOWARD DAVID PROVINE,                    Case No. CV 11-00903 SI
    individually and on behalf of other persons
12  similarly situated,                      **DEFENDANT OFFICE DEPOT, INC.'S**
                                             **MEMORANDUM OF POINTS AND**
13              Plaintiff,                    **AUTHORITIES IN SUPPORT OF**
                                             **OPPOSITION TO PLAINTIFF HOWARD**
14         vs.                               **DAVID PROVINE'S MOTION FOR CLASS**
                                             **CERTIFICATION**
15  OFFICE DEPOT, INC. and DOES 1
    through 10,                              **Date:          March 23, 2011**
16                                           **Time:          9:00 a.m.**
                                             **Courtroom:  10**
17              Defendants.

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

Page

I. INTRODUCTION AND PRELIMINARY STATEMENT ................................................. 1

II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUNDS ............................... 2

    A. Bravo Prizes .......................................................................................................... 3

        1. The Reasons for Bravo Cards Distribution Cannot Be Established Through Common Proof ..................................................................... 3

        2. Drawing Frequency Cannot Be Established Through Common Proof ................................................................................................. 6

        3. The Number of Bravo Cards in a Drawing – and Thus the Chances of Winning a Prize – Cannot Be Established Through Common Proof .............................................................................................. 8

    B. Provine's Employment with Office Depot ............................................................ 9

    C. Relevant Procedural Background ........................................................................ 10

III. LEGAL STANDARD GOVERNING CLASS CERTIFICATION ................................ 11

IV. PROVINE CANNOT SATISFY RULE 23 REQUIREMENTS ON HIS OVERTIME CLAIM ..................................................................................................... 11

    A. Provine Cannot Establish Rule 23(a) Commonality ........................................... 11

        Id. at 2551 (emphasis added). In Dukes, the plaintiffs failed to prove the "glue holding the alleged reasons for . . . decisions together" making it "impossible to say that examination of all the class members' claims for relief will produce a common answer." Id. at 2552. Provine's overtime claim hinges on whether an individual Bravo prize is "discretionary" or "non-discretionary." This issue cannot be resolved on a classwide basis through common proof. Thus, Provine cannot establish commonality ............................................. 12

    B. Provine Cannot Establish Rule 23(a) Adequacy ................................................ 16

    C. Provine Cannot Satisfy Rule 23(b)(3) Predominance ......................................... 18

    D. A Class Action Is Not a Superior Method of Adjudication ................................. 21

V. PROVINE CANNOT SATISFY RULE 23 REQUIREMENTS FOR HIS WAITING TIME PENALTIES CLAIM ......................................................................... 22

VI. PROVINE CANNOT SATISFY RULE 23 REQUIREMENTS FOR HIS WAGE STATEMENT CLAIM ..................................................................................... 23

VII. THE DERIVATIVE UCL CLAIM ALSO REQUIRES INDIVIDUAL INQUIRIES .................................................................................................................. 25

VIII. CONCLUSION ........................................................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*Advanced-Tech Security Serv., Inc. v. Superior Ct.*,

5
    163 Cal. App. 4th 700 (2008) ............................................. 12

6

*Anderson v. Mt. Clemens Pottery Co.*,
    328 U.S. 680 (1946) ............................................................... 20

7

*Attenborough v. Construction & Gen. Bldg. Laborers' Local 79*,

8
    238 F.R.D. 82 (S.D.N.Y. 2006) .......................................... 18

9

*Blackwell v. SkyWest Airlines, Inc.*,

10
    245 F. R. D. 453 (S.D. Cal. 2007)....................................... 24

11

*Brown v. Federal Express Corp.*,
    249 F.R.D. 580 (C.D. Cal. 2008) ....................................... 21

12

*Brown v. Nipper Auto Parts & Supplies, Inc.*,

13
    2009 WL 1437836 (W.D. Va. 2009) ................................... 13

14

*Cobb v. Avon Prods., Inc.*,
    71 F.R.D. 652 (W.D. Pa. 1976)........................................... 17

15

16

*Cornn v. UPS*,
    2005 U.S. Dist. LEXIS 47052 (N.D. Cal. 2005)................ 25

17

*Cuadra v. Millan*,

18
    17 Cal. 4th 855 (1998) ......................................................... 22

19

*Duran v. U.S. Bank Nat'l Ass'n*,

20
    2012 Cal. App. LEXIS 107 (2012) ..................................... 21

21

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)............................................................. 15

22

*Elliot v. Spherion Pacific Work, LLC*,

23
    572 F. Supp. 2d 1169 (C.D. Cal. 2008), *aff'd* 368 Fed. Appx. 761 (9th Cir. 2011) .............. 24

24

*Garcia v. Sun Pacific Farming Co.*,
    2008 WL 2073979 (E.D. Cal. 2008), *aff'd*, 359 Fed. Appx. 724 (9th Cir. 2009).................. 15

25

*Goldberg v. Kelly*,

26
    397 U.S. 254 (1970)............................................................. 21

27

*Hale v. Morgan*,

28
    22 Cal. 3d 388 (1978) .......................................................... 23

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)..................................................................... 17

*In re Cal. Micro Devices Sec. Litig.*,
  168 F.R.D. 257 (N.D. Cal. 1996)................................................................. 17

*In re Goldchip Funding Co.*,
  61 F.R.D. 592 (M.D. Pa. 1974)................................................................... 17

*In re Visa Check/MasterMoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001)........................................................................ 18

*In re Wells Fargo Home Mortgage Overtime Pay Litig.*,
  571 F.3d 953 (9th Cir. 2009)....................................................................... 18

*Jasper v. C.R. England, Inc.*,
  2009 U.S. Dist. LEXIS 34802 (C.D. Cal. 2009)......................................... 24

*Jimenez v. Domino's Pizza*,
  238 F.R.D. 241 (C.D. Cal. 2006) .......................................................... 21, 22

*Kamm v. California City Dev. Co.*,
  509 F.2d 205 (9th Cir. 1975)....................................................................... 22

*Kimoto v. McDonald's Corp.*,
  2008 U.S. Dist. LEXIS 86218 (C.D. Cal. 2008)......................................... 23

*Kline v. Coldwell, Banker & Co.*,
  508 F.2d 226 (9th Cir. 1974).................................................................. 21, 23

*Krantz v. BT Visual Images, LLC*,
  89 Cal. App. 4th 164 (2001) ....................................................................... 25

*Lindow v. United States*,
  738 F.2d 1057 (9th Cir. 1984)..................................................................... 20

*Lolley v. Campbell*,
  28 Cal. 4th 367 (2002) ................................................................................ 22

*Marlo v. UPS, Inc.*,
  639 F.3d 942 (9th Cir. 2011)....................................................................... 11

*Mendoza v. Home Depot, USA, Inc.*,
  2010 U.S. Dist. LEXIS 13025 (C.D. Cal. 2010)......................................... 21

*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*,
  37 Cal. 4th 707 (2005)........................................................................... 22, 23

*Porch v. Masterfoods USA, Inc.*,
  685 F. Supp. 2d 1058 (C.D. Cal. 2008) ..................................................... 23

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

*Prachasaisoradej v. Ralph's Grocery Co.*,
  42 Cal. 4th 217 (2007) ........................................................................................ 25

*Price v. Starbucks*,
  192 Cal. App. 4th 1136 (2011) ....................................................................... 24, 25

*Reber v. AIMCO/Bethesda Holdings, Inc.*,
  2008 U.S. Dist. LEXIS 81790 (C.D. Cal. 2008) ............................................... 24

*Reid v. Lockheed Martin Aeronautics Co.*,
  205 F.R.D. 655 (N.D. Ga. 2001) ....................................................................... 23

*Rubin v. Wal-Mart Stores, Inc.*,
  599 F. Supp. 2d 1176 (N.D. Cal. 2009) ........................................................ 13, 25

*Sepulveda v. Wal-Mart Stores, Inc.*,
  237 F.R.D. 229 (C.D. Cal. 2006), *rev'd in part on other grounds*, 275 Fed. Appx. 672
  (9th Cir. 2008) ..................................................................................................... 11

*Southwestern Telegraph & Tel. Co. v. Danaher*,
  238 U.S. 482 (1915) ............................................................................................ 22

*State Farm Mutual Auto Ins. Co. v. Campbell*,
  538 U.S. 408 (2003) ............................................................................................ 22

*United States v. Citrin*,
  972 F.2d 1044 (9th Cir. 1992) ............................................................................ 22

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) ......................................................................... 21, 22

*Villacres v. ABM Industries, Inc.*,
  384 Fed. Appx. 626 (9th Cir. 2010) .................................................................... 24

*Vinole v. Countrywide Home Loans, Inc.*,
  571 F.3d 935 (9th Cir. 2009) .......................................................................... 15, 18

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ................................................................................. passim

*Weisman v. Darneille*,
  78 F.R.D. 669 (S.D.N.Y. 1978) ......................................................................... 17

*Zator v. Sprint/United Mgmt. Co.*,
  2011 WL 1157527 (S.D. Cal. 2011) ................................................................... 13

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ............................................................... 11, 18, 21

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

DB2/ 22982314.1

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

STATUTES

Fed. R. Civ. P.  23 ................................................................................................ passim

29 U.S.C. § 207 ................................................................................................ 12, 13

Cal. Labor Code § 203 ............................................................................................ 22

Cal. Labor Code § 226 ...................................................................................... 24, 25

Cal. Labor Code § 510 ............................................................................................ 12

OTHER AUTHORITIES

29 C.F.R. § 548.3(e) ............................................................................................... 20

29 C.F.R. § 548.305 ............................................................................................... 20

29 C.F.R. § 778.200(a)(3) ...................................................................................... 12

29 C.F.R. § 778.208 ............................................................................................... 13

29 C.F.R. § 778.209(b) .......................................................................................... 19

29 C.F.R. § 778.211 ............................................................................................... 13

29 C.F.R. § 778.331 ............................................................................................... 14

29 C.F.R. § 778.332 ............................................................................................... 13

1996.08.06 DOL Opinion Letter, 1996 WL 1031796 ............................................ 13

DLSE Enforcement Policies & Interpretations Manual § 49 *et seq.* (2002) ................................. 12

DLSE Enforcement Policies & Interpretations Manual § 35.7 (2002) ....................... 12

1987.02.17 DLSE Opinion Letter ........................................................................... 13

1991.03.06 DLSE Opinion Letter  ........................................................................... 12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 22982314.1

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

# I.      **INTRODUCTION AND PRELIMINARY STATEMENT**

Plaintiff Howard David Provine ("Provine") worked as a non-exempt employee at an Office Depot retail store located in Antioch, California for just over six months (June 2010 through December 2010).  During his employment, Provine won a drawing for a Bravo prize on two occasions (for the month of July 2010 and for the month of November 2010), and he received $50 in his paycheck following each respective drawing.  Following the termination of his employment, Provine filed a complaint against Office Depot,[1] asserting for the first time that Office Depot should have included his prize in the regular rate of pay for the month preceding the drawing for the prize.  Thus, he claims that he should have received an additional overtime payment in addition to the prize.  Even if Provine were correct in his argument (which he is not), his additional payment for the July prize would total 19 cents ($0.19) and his additional payment for the November prize would total 4 cents ($0.04), for a total amount at issue of 23 cents ($0.23).

Provine seeks to certify a class of all non-exempt employees who worked in California, including retail stores, warehouse distribution facilities, and the Business Solutions Division ("BSD"), and who won a drawing for a Bravo prize during a month in which they worked overtime hours.  For the reasons discussed below, Provine cannot meet the demanding requirements for class certification under Federal Rule of Civil Procedure ("Rule") 23.

First, Provine cannot establish commonality as explained by *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), which held that "commonality" means that a plaintiff's claims "must depend upon a common contention . . . that is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.* at 2544.  Here, Provine's claim hinges on whether the Bravo prizes he received were discretionary.  If discretionary, then Office Depot properly excluded them from the regular rate.  To make a determination as to the discretionary nature of any particular Bravo prize, the Court would need to examine the circumstances surrounding the receipt of each individual prize including whether an individual had any expectation of receiving a Bravo card which was then placed in a drawing, the frequency of the drawing for a prize at any particular location, and how

---

[1] Office Depot intends to file a summary judgment motion on Provine's claims prior to the class certification hearing.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

many Bravo cards were in the drawing to determine the probability of winning.  None of these questions can be answered on a classwide basis through common proof.  Thus, Provine cannot establish commonality as required by Rule 23(a)(2).

Next, Provine cannot establish that he is an adequate class representative, a class action is superior, or common issues predominate over individual issues.  Rather, Office Depot's evidence shows that individual inquiries are necessary to determine liability as to each employee with respect to each prize awarded.  First, the Court would need to determine whether each prize was discretionary.  Then, even if the Court determined that a given prize was non-discretionary, it would then need to determine the period during which cards were handed out for the drawing and review the winner's individual time records to determine how much overtime, if any, the winner worked during the period.  Finally, the Court would need to determine on an individualized basis whether the amount of overtime purportedly owed for any drawing is *de minimis*.  Thus, individualized issues predominate and a class action is not the superior method of resolving Provine's claims.

Because Provine's claim for alleged unpaid overtime cannot be adjudicated on a classwide basis, neither can his admittedly derivative claims for alleged failure to pay wages upon termination ("waiting time penalties claim"), failure to provide accurate wage statements ("wage statement claim"), and unfair competition ("UCL claim").  Further, Provine's wage statement claim cannot be certified for the added reason that a liability finding would require an individual inquiry as to whether each employee suffered injury as a result of a particular wage statement and, if so, the type and extent of such injury.  Provine provides no argument concerning how he could show injury on a classwide basis.  In fact, Provine testified that he did not suffer any injury as a result of alleged wage statement violations.  As to his waiting time penalties claim, an additional individualized inquiry would be required to determine whether the alleged penalty is unconstitutionally confiscatory.  Such individualized issues defeat Provine's effort to certify a class on these claims.

## II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUNDS

Office Depot is a supplier of office products and services, which it sells through its chain of office supply retail stores, currently numbering about 150 in California.  In addition, customers can order merchandise from Office Depot.  In order to fill these orders and to supply merchandise to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 22982314.1

2

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

stores, Office Depot operates two warehouse distribution facilities in California, in Signal Hill and Fremont.  In addition, Office Depot runs a Business Solutions Division ("BSD") which endeavors to procure contracts with various entities, including school districts, governmental offices, and private sector companies, to buy Office Depot merchandise.  BSD is divided into various regions, with three regions having employees in California.

### A.    **Bravo Prizes**

To recognize employees for going above and beyond the call of duty, Office Depot implemented a Bravo Award Program (the "Program").  Policy, pg. 4 (Office Depot's Appendix of Evidence ("EA") 33); Hale Depo. 20:21-21:11, 22:4-11 (EA 82-84).  The Program may be utilized by the retail stores, the warehouses, and BSD.  Hale Depo. 27:6-12 (EA 85).  As discussed below, retail stores, warehouses, and BSD implement the Program in very different ways.  Even within the same facility type, individual managers operate the Program very differently from store to store.

The Program allows managers to present non-exempt employees with Bravo cards.  *See, e.g.,* Breedlove Decl. ¶ 3 (EA 38); Hamamoto Decl. ¶ 3 (EA 48).  The Bravo cards have no cash or other monetary value.  *See, e.g.,* Hale Depo. 35:22-36:3 (EA 91); Breedlove Decl. ¶ 6 (EA 39); Hamamoto Decl. ¶ 5 (EA 49).  Rather, at retail stores and warehouse facilities, cards constitute raffle tickets that may be placed in a box (or a fishbowl or hat) for a periodic drawing for a cash prize.  *See, e.g.,* Hale Depo. 31:15-18 (EA 87); McDowell Decl. ¶ 3 (EA 59); Hamamoto Decl. ¶ 5 (EA 49).  The drawing frequency varies by location and depends on individual manager practices.

Office Depot places no per-location or per-employee limit or quota on the number of Bravo cards that may be issued.  *See, e.g.,* Breedlove Decl. ¶ 6 (EA 39); Hamamoto Decl. ¶ 3 (EA 48); Katan Decl. ¶ 5 (EA 54); Norris Decl. ¶ 7 (EA 72).  The chances of winning a drawing depend on the number of cards in the box.  Provine Depo. 30:6-12 (EA 114).  The winner of the drawing wins a cash prize in the amount of $50, while other employees with cards in the box receive nothing, and their cards are discarded.  Hale Depo. 36:1-3, 37:13-16 (EA 92-93); Breedlove Decl. ¶¶ 5-6 (EA 39); Hamamoto Decl. ¶¶ 5, 7 (EA 49); Katan Decl. ¶ 6 (EA 55); McDowell Decl. ¶ 5 (EA 60).

### 1.    **The Reasons for Bravo Cards Distribution Cannot Be Established Through Common Proof**

The decision to give a Bravo card rests with the discretion of individual managers.  Hale

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 22982314.1

3

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Depo. 30:23-31:10 (EA 86-87).  The Program procedures provide a non-exhaustive list of areas in which exceptional conduct **may** warrant the award of a Bravo card.  Policy, pg. 4-5 (EA 33-34). These areas include providing excellent customer service, possessing extensive expertise of product or operational knowledge, efficiency, productivity, honesty and integrity, taking the initiative, cooperation and teamwork, flexibility, and producing significant saving of money or assets.  *Id.*

At the retail store level, managers are free to hand out Bravo cards to hourly employees as they see fit.[2]  Because individual managers determine what behavior warrants a Bravo card, an employee generally has no expectation of actually receiving a card.  Some of the reasons that Bravo cards may be given to a retail store, non-exempt employee include, but are not limited to, the following:  any conduct a manager believes is deserving of a card (Breedlove Decl. ¶ 3 (EA 38); Katan Decl. ¶ 4 (EA 54)); showing initiative (Buehner Decl. ¶ 4 (EA 41)); seeing that an area needs recovering and taking care of recovering it without having to be asked to do it (*id.*); going the extra mile in helping out a customer (*id.*); any behavior going above and beyond the call of duty (McDowell Decl. ¶ 4 (EA 59); Katan Decl. ¶ 4 (EA 54)); receiving a compliment from a customer for the service the customer received (McDowell Decl. ¶ 4 (EA 59); Montes Decl. ¶ 3 (EA 67); Norris Decl. ¶ 6 (EA 72)); going out of the way to help a customer find merchandise in the store (McDowell Decl. ¶ 4 (EA 59)); going above and beyond the normal day to day job responsibilities (Menjivar Decl. ¶ 3 (EA 63)); spending extra time with a customer to answer the customer's questions (*id.*); when a customer asks where specific merchandise is located in the store, taking the time to walk the customer to where the merchandise is located, rather than just telling the customer what aisle the merchandise is located (*id.*); when a store is out of specific merchandise that a customer wants, helping the customer by calling another nearby Office Depot store to see if that store has the merchandise (*id.*); making a particularly big sale (Montes Decl. ¶ 3 (EA 67)); meeting certain sales goals (*id.*); providing great customer service (*id.*); completing projects within certain time frames (*id.*); doing something extra (*id.*); providing superior customer service (Norris Decl. ¶ 6 (EA 72)); selling a Product Protection Plan (*id.*); and when a store runs a promotion, up-selling the

---

[2] *See, e.g.,* Breedlove Decl. ¶ 3 (EA 38); Buehner Decl. ¶¶ 3-4 (EA 41); Katan Decl. ¶ 4 (EA 54); McDowell Decl. ¶ 4 (EA 59); Menjivar Decl. ¶ 3 (EA 63); Norris Decl. ¶ 6 (EA 72); Oliarez Decl. ¶ 4 (EA 75).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 22982314.1

4

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1   promotion to customers (*id.*).

2          All non-exempt employees, including Assistant Managers ("AMs") and Department

3   Managers ("DMs"), are eligible for Bravo cards.[3]  AMs and DMs at some stores, however, have

4   little expectation of ever receiving a Bravo card.  For example, at the Fresno store, the Store

5   Manager ("SM") holds his AM and DMs to a high standard.  Buehner Decl. ¶ 4 (EA 41).  Thus, at

6   Fresno, the AM and DMs rarely, if ever, receive Bravo cards.  *Id.*  Likewise, at the Temecula store,

7   the SM generally does not give out Bravo cards to his DMs.  Katan Decl. ¶ 3 (EA 54).  The same is

8   true at the Antioch store, where Provine worked.  The Antioch SM believes the Program is more for

9   the non-managerial associates, and thus holds managers to a higher standard.  Norris Decl. ¶ 5 (EA

10  71).  As a result, it is very difficult for his managers to receive a Bravo card.  *Id.*

11         Some managers are also more discerning with handing out Bravo cards to non-management

12  associates.  For instance, one SM typically gives out fewer Bravo cards to non-exempt employees

13  than his AM and DMs.  Menjivar Decl. ¶ 4 (EA 64).  To get a Bravo card from this SM, an

14  employee needs to "wow" him.  *Id.*  At times, rather than giving out a Bravo card, the SM will

15  praise the employee; other times, he will give a card.  *Id.*  Thus, employees have no expectation that

16  they will receive a card even for behavior that might have warranted a card in the past – the

17  employees at this store are just as likely to receive verbal praise as a Bravo card.  ***Provine himself***

18  ***testified that he was aware that he might not receive any Bravo cards, and he did not have an***

19  ***advance expectation of receiving one.***  Provine Depo. 18:2-8, 27:20-28:3 (EA 106, 111-112).

20         At the Signal Hill warehouse, non-exempt employees receive cards for different things than

21  their non-exempt counterparts at retail stores and in BSD.  It is up to each warehouse manager to

22  decide why they should give out Bravo cards to their employees.  Hamamoto Decl. ¶ 4 (EA 48).

23  Some managers give out Bravo cards if one of their employees agree to stay longer than they are

24  scheduled to work to help out.  *Id.*  For instance, if a conveyor belt breaks down for two hours,

25  delaying the production at the warehouse, employees who volunteer to work overtime might receive

26  Bravo cards.  *Id.*  Some warehouse managers give out Bravo cards if an employee helps out in

27

28  _____
    [3] *See, e.g.,* Breedlove Decl. ¶ 3 (EA 38); Buehner Decl. ¶ 5 (EA 42); Katan Decl. ¶ 3 (EA 54); Montes Decl. ¶ 4 (EA 67); Norris Decl. ¶ 5 (EA 71); Olivares Decl. ¶ 3 (EA 75).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 22982314.1

5

1   another department or if the employee does something without having to be asked.  *Id.*  Other

2   warehouse managers give out Bravo cards if an employee comes up with an innovative idea that

3   will help fix a problem or make things run more smoothly.  *Id.*  For example, if an employee brings

4   a safety issue to the attention of maintenance or management, the employee might receive a card.

5   *Id.*  Some warehouse managers give out Bravo cards if an employee works on an extra project or

6   completes a project ahead of schedule.  *Id.*  Unlike Signal Hill, the Fremont warehouse managers do

7   not hand out any Bravo cards, and the warehouse does not hold drawings for Bravo prizes.

8   Williams Decl. ¶ 3 (EA 78).

9       In BSD, one of the California regions used to give out Bravo cards to non-exempt

10   employees who went above and beyond their job.  Eyraud Decl. ¶ 5 (EA 44).  For instance, an

11   individual sales contributor who really went all out to secure a contract or to keep an existing

12   customer happy might have received a Bravo card.  *Id.*  Likewise, a sales assistant who stepped in

13   to help out a customer or took on an extra project that took a burden off one of the individual sales

14   contributor might have received a Bravo card.  *Id.*  On at least one occasion, one manager wanted to

15   recognize an assistant for doing a particularly good job, so the manager just decided to give the

16   assistant a $50 Bravo prize without handing out any Bravo cards.  *Id.* ¶ 9 (EA 46).  Currently, none

17   of the three BSD regions encompassing California hand out Bravo cards.  Eyraud Decl. ¶ 8 (EA

18   46); Holliday Decl. ¶ 5 (EA 52); Lupo Decl. ¶ 5 (EA 57).

19              **2.       Drawing Frequency Cannot Be Established Through Common Proof**

20       Although a drawing for the Bravo prize is supposed to be done on a monthly basis, in

21   actuality, the frequency of the drawing varies depending on each manager's preferences.  Hale

22   Depo. 32:15-33:16, 34:23-35:16 (EA 88-91).  No common proof can establish the frequency of the

23   drawing on a classwide basis.

24       For instance, at the Antioch store where Provine worked, the SM did not understand that the

25   drawing could be done on a monthly basis.  Norris Decl. ¶ 4 (EA 71).  The Antioch SM believed

26   that the timing of the drawing was completely discretionary, so he chose how often to hold the

27   drawing.  *Id.*  The Antioch store did not consistently hold a drawing on a regular basis prior to the

28   last year or so.  *Id.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

6

DB2/ 22982314.1

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1   At the Fountain Valley store, the SM currently holds a monthly drawing.  Breedlove Decl. ¶

2   4 (EA 38).  In the past, however, the Fountain Valley SM did not always conduct a drawing on a

3   monthly basis, sometimes skipping a month, especially if the SM was on vacation or out of the

4   store.  *Id.*  At the Fresno store, the SM sometimes gets too busy and forgets to hold the monthly

5   drawing.  Buehner Decl. ¶ 7 (EA 42).  If the Fresno SM forgets to conduct a monthly drawing, he

6   does not double up on drawings the next month; rather, he just combines the Bravo cards given out

7   for those two months and draws just one winning card.  *Id.*  There have also been months when the

8   Fresno SM thought there were too few Bravo cards in the hat for a drawing to make sense, so the

9   SM decided to skip the drawing that month.  *Id.*

10   Similarly, in the past, the Temecula store sometimes skipped a monthly drawing or two.

11   Katan Decl. ¶ 7 (EA 55).  Usually this was because the SM forgot to do the drawing.  *Id.*  When this

12   happened, the SM might put all of the Bravo cards given out during a two or three month period in

13   one box and draw two or three winners.  *Id.*  At the Northridge store, the SM is not always good at

14   conducting a drawing each month.  Olivarez Decl. ¶ 7 (EA 76).  From the SM's perspective, he can

15   decide when and how often to do the drawing, and things sometimes get too busy at the end of the

16   month.  *Id.*  The SM may forget a drawing, even forgetting two or three drawings in a row.  *Id.*

17   The frequency of the drawing also changed at stores over periods of time, depending on the

18   manager's commitment to the Program.  For example, the Salinas store currently holds monthly

19   drawings.  McDowell Decl. ¶ 6 (EA 60).  The previous SM, however, did not conduct drawings on

20   a monthly basis, let alone a regular basis.  *Id.*  Because the drawing was not done monthly, the

21   Bravo cards would just stay in the fishbowl until a drawing took place.  *Id.*

22   The frequency of the drawing for a Bravo prize also varies at the warehouses and in BSD.

23   The warehouse in Signal Hill conducts quarterly drawings.  Hamamoto Decl. ¶ 6 (EA 49).  The

24   warehouse in Fremont has not held a Bravo drawing since before 2007.  Williams Decl. ¶ 3 (EA

25   78).  In the past, one of the three California regions in BSD utilized the Program and generally held

26   drawings on a monthly basis.  Eyraud Decl. ¶¶ 5-7 (EA 44-45).  Currently, none of the three

27   California regions in BSD utilize the Program on a regular basis.  Eyraud Decl. ¶ 8 (EA 46);

28   Holliday Decl. ¶ 5 (EA 52); Lupo Decl. ¶ 5 (EA 57).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 22982314.1

7

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

### 3.   The Number of Bravo Cards in a Drawing – and Thus the Chances of Winning a Prize – Cannot Be Established Through Common Proof

The chances of an employee winning a Bravo prize for a particular drawing necessarily depends on the number of Bravo cards he or she receives that are in the drawing as well as the total number of Bravo cards in the drawing.  It is entirely up to the managers at the retail stores to decide how many Bravo cards to give out; there is no minimum or maximum number of cards that are supposed to be given out.[4]  There are also no limits on the number of Bravo cards that an individual employee can receive.[5]  Sometimes an employee might have zero, one, two, or even more Bravo cards in given drawing.[6]  Provine testified that in one drawing, he had 16 cards.  Provine Depo. 17:7-13 (EA 105).  Because there is no minimum or maximum number of Bravo cards that are supposed to be handed out, the actual number of cards given out varies by location and by manager.

A review of just a few of the stores establish that the chances of winning varies greatly:

| Store | Min. # of Cards | Max. # of Cards | Avg. # of Cards | Evidence |
|---|---|---|---|---|
| Antioch | 40-50 | 150 | 80-120 | Norris Decl. ¶ 7 (EA 72) |
| Fountain Valley | 25 | 80 | | Breedlove Decl. ¶ 6 (EA 39) |
| Fresno | 15 | 40 | | Buehner Decl. ¶ 6 (EA 42) |
| Northridge | 30 | 75 | | Olivarez Decl. ¶ 4 (EA 75) |
| Oxnard | | 100 | 50 | Montes Decl. ¶ 5 (EA 68) |
| Salinas | | | 20-25 | McDowell Decl. ¶ 5 (EA 60) |
| San Rafael | 3 | 40 | | Menjivar Decl. ¶ 6 (EA 64) |
| Temecula | 20 | 75-80 | | Katan Decl. ¶ 5 (EA 54) |
| Thousand Oaks | 100 | 200 | 150 | Montes Decl. ¶ 4 (EA 67) |

Moreover, at some stores, employees are permitted to hoard Bravo cards if they receive a lot of cards in a particular month.  Menjivar Decl. ¶ 7 (EA 64); Olivarez Decl. ¶ 6 (EA 76).  For instance, some employees might choose to put a few cards in one drawing and hold onto the rest of

---

[4] *See, e.g.,* Breedlove Decl. ¶ 6 (EA 39); Buehner Decl. ¶ 6 (EA 42); Katan Decl. ¶ 5 (EA 54); McDowell Decl. ¶ 5 (EA 60); Menjivar Decl. ¶ 5 (EA 64); Montes Decl. ¶ 4 (EA 67); Norris Decl. ¶ 7 (EA 72); Olivarez Decl. ¶ 4 (EA 75).
[5] *See, e.g.,* Norris Decl. ¶ 7 (EA 72); Olivarez Decl. ¶ 5 (EA 75).
[6] *See, e.g.,* Breedlove Decl. ¶ 6 (EA 39); Katan Decl. ¶ 5 (EA 54); McDowell Decl. ¶ 5 (EA 60); Menjivar Decl. ¶ 5 (EA 64); Norris Decl. ¶ 7 (EA 72); Olivarez Decl. ¶ 5 (EA 75).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 22982314.1

8

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

the cards for the next drawing.  *Id.*  Other stores do not permit employees to use cards other than in the drawing for the period that they receive the card.  *See, e.g.,* Norris Decl. ¶ 9 (EA 73).

The number of Bravo cards given out often varies depending on the size of the store.  For example, the Thousand Oaks store is very busy with lots of customer foot traffic, and thus the SM states that there are many customer service opportunities that allow employees to receive Bravo cards as well as other types of opportunities for employees to do things that warrant a Bravo card.  Montes Decl. ¶ 4 (EA 67).  On average, 150 cards are given out each month at the Thousand Oaks store.  *Id.*  By contrast, at the Oxnard store where the same SM used to work, less opportunities for receipt of Bravo cards arose, and thus on average only about 50 cards each month were given out for a drawing.  *Id.* ¶ 5 (EA 68).

The chances of winning a prize also varies at warehouses and in BSD.  Over 350 non-exempt employees currently work at the Signal Hill warehouse.  Hamamoto Decl. ¶ 6 (EA 49).  During its quarterly drawings, the Signal Hill warehouse draws about 15 winning cards.  *Id.*  In BSD, when the program was being utilized by the Northern California region, about 12-14 Bravo cards were handed out each month and, depending on the manager's discretion, anywhere between one and three winning cards were picked out of the hat each drawing.  Eyraud Decl. ¶¶ 6-7 (EA 45).  In addition, even though the Northern California region no longer uses the Program on a consistent basis, at least one manager has given out a $50 Bravo prize to an assistant.  *Id.* ¶ 9 (EA 46).  The manager did not hand out any Bravo cards nor did the manager hold a drawing.  *Id.*

## B.     Provine's Employment with Office Depot

From about June 13, 2010 to December 30, 2010, Provine worked at the Office Depot retail store located in Antioch, California.  Provine Depo. 12:14-19, 14:21-25 (EA 102, 104); Provine Decl. ¶ 2.  During his entire employment with Office Depot, Provine was a non-exempt employee and paid on an hourly basis.  Provine Depo. 13:10-15 (EA 103).  Provine never worked at any store other than Antioch.  Provine Depo. 28:17-19 (EA 112).  Nor did he work at a warehouse or in BSD.  Provine Depo. 29:12-14, 29:21-23 (EA 113).

During his employment, Provine won two, $50 Bravo prizes – one for the month of July 2010 (which was paid in his paycheck dated August 6, 2010), and one for the month of November

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 22982314.1

9

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1   2010 (which was paid in his paycheck dated December 10, 2010).  Provine Depo. 17:19-20, 23:2-

2   24:10, 24:22-25:8 (EA 105, 108-110).  Provine conceded during his deposition that he never

3   thought the Bravo prize should be included in the regular rate calculation, until he met with his

4   attorney.  Provine Depo. 12:2-7, 13:4-6, 28:20-24 (EA 102-103, 112).

5          During the entire month of July, Provine worked 0.25 hours of overtime and 101.28 total

6   hours.  Bradford Decl. ¶ 7 (EA 6).  Thus, if his $50 prize were included in his regular rate, the

7   additional overtime amount would be $0.74 per overtime hour [($50/101.28 hours) x 1.5].[7]  *Id.*

8   Thus, even if he is correct that his prize should have been included in the regular rate (which he is

9   not), the total amount of overtime he would have been paid equals 19 cents ($0.19) [$0.74*0.25

10  hours].  *Id.*  During the entire month of November, Provine worked no more than 0.067 hours of

11  overtime and 114.02 total hours.  *Id.* ¶ 8 (EA 7).  Thus, if his $50 prize were included in his regular

12  rate, the additional amount would be $0.66 per overtime hour [($50/114.02 hours) x 1.5].  *Id.*  Thus,

13  even if he is correct that his prize should have been included in the regular rate (which he is not),

14  the total amount of overtime he would have been paid equals four cents ($0.04) [$0.66 x 0.067].  *Id.*

15  Thus, the total overtime at issue for Provine is less than 25 cents ($0.25).

16         **C.    Relevant Procedural Background**

17         On January 19, 2011, Provine filed a Complaint against Office Depot, alleging that Office

18  Depot purportedly failed to include commissions and Bravo prizes in the regular rate calculation for

19  its hourly employees.  The Complaint includes the following four claims for relief:  (1) Failure to

20  Pay Overtime Wages; (2) Failure to Provide Accurate Wage Statements; (3) Unfair Competition;

21  and (4) Failure to Pay All Wages Owed Upon Termination.  On July 18, 2011, Provine filed a First

22  Amended Complaint ("FAC") that eliminated the claims based on a purported failure to properly

23  include certain commission payments into the regular rate calculation, leaving only overtime claims

24  based on purported failure to include Bravo prizes in the regular rate calculation.  On December 14,

25  2011, Provine filed a Second Amended Complaint ("SAC"), adding a fifth claim for relief to

26  recover civil penalties under PAGA.

27         In his Motion, Provine seeks to certify four classes comprised of non-exempt employees

28

[7] For purposes of this Opposition only, Office Depot is using assumptions most beneficial to Provine.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 22982314.1

10

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

who worked in California during the applicable statute of limitations period and who received a

Bravo prize during a month in which they worked overtime hours.  (Not. of Mot. at 2.)

### III.   LEGAL STANDARD GOVERNING CLASS CERTIFICATION

Provine bears the heavy burden of establishing that the proposed class meets all of the Rule

23(a) requirements and at least one Rule 23(b) requirement.  *Zinser v. Accufix Research Inst., Inc.*,

253 F.3d 1180, 1186 (9th Cir. 2001); *see also Marlo v. UPS, Inc.*, 639 F.3d 942, 947 (9th Cir.

2011).  The party seeking class certification must affirmatively demonstrate his or her compliance

with Rule 23 – "that is, he must be prepared to prove that there are in fact sufficiently numerous

parties, common questions of law or fact, etc."  *Dukes*, 131 S. Ct. at 2551.  "Rule 23 does not set

forth a mere pleading standard"; rather, certification is proper only if "the trial court is satisfied,

after a rigorous analysis, that the prerequisites of [Rule 23] have been satisfied."  *Id*.; *see also*

*Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D. 229, 233 (C.D. Cal. 2006), *rev'd in part on other*

*grounds*, 275 Fed. Appx. 672 (9th Cir. 2008) (stating that before certifying a class, the trial court

must conduct an "intense factual investigation" and a "rigorous analysis to determine whether the

party seeking certification has met the prerequisites of Rule 23").  This "rigorous analysis" ensures

that a class will only be certified where the plaintiff's testimony can be representative of each

putative class member.  As discussed below, Provine cannot satisfy the demanding burden of

showing that class certification is appropriate under Rule 23.

### IV.   PROVINE CANNOT SATISFY RULE 23 REQUIREMENTS ON HIS OVERTIME CLAIM

#### A.   Provine Cannot Establish Rule 23(a) Commonality

Under Rule 23(a)(2), Provine must prove that questions of law or fact common to the class exist

by offering "significant proof" that a common question will resolve a significant aspect of the putative

class members' claims on a classwide basis.  *Dukes*, 131 S. Ct. at 2553.  Raising common questions is not

enough; Provine must show that they can be answered through common proof on a classwide basis:

> Commonality requires the plaintiff to demonstrate that the class members "have suffered
> the same injury."  This does not mean merely that they have all suffered a violation of the
> same provision of law. . . . Quite obviously, the mere claim by employees of the same
> company that they have suffered . . . [the same] injury, gives no cause to believe that all
> their claims can productively be litigated at once.  Their claims must depend upon a
> **common contention** . . . of such a nature that is capable of **classwide resolution** – which

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 22982314.1

11

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. . . . "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate **common answers** apt to drive the resolution of the litigation."

*Id.* at 2551 (emphasis added).  In *Dukes*, the plaintiffs failed to prove the "glue holding the alleged reasons for . . . decisions together" making it "impossible to say that examination of all the class members' claims for relief will produce a common answer." *Id.* at 2552.  Provine's overtime claim hinges on whether an individual Bravo prize is "discretionary" or "non-discretionary."  This issue cannot be resolved on a classwide basis through common proof.  Thus, Provine cannot establish commonality.

### 1. Discretionary Bonuses Are Properly Excluded from the Regular Rate

California law requires an employer to pay non-exempt employees for any hours worked in excess of eight hours in one workday and forty hours in one workweek "at the rate of no less than one and one-half times the regular rate of pay."  Cal. Labor Code § 510.  Neither the Wage Orders nor the California Labor Code, however, explicitly defines the term "regular rate of pay."  Thus, the California Division of Labor Standards Enforcement ("DLSE"), which is charged with enforcing California's Wage Orders, recommends that the courts look to the Fair Labor Standards Act ("FLSA") and adopt its definition of "regular rate of pay":  "In determining what payments are to be included in or excluded from the calculation of the regular rate of pay, California law adheres to the standards adopted by the U.S. Department of Labor to the extent that those standards are consistent with California law."  *See* DLSE Enforcement Policies & Interpretations Manual ("DLSE Manual") § 49.1.2 (2002); *see also Advanced-Tech Security Serv., Inc. v. Superior Ct.*, 163 Cal. App. 4th 700, 707 (2008) (explaining that California law looks to the FLSA to determine what is excludable from compensation when calculating the "regular rate").

The FLSA excludes from the regular rate of pay discretionary bonuses.[8]  29 U.S.C. § 207(e)(3); 29 C.F.R. § 778.200(a)(3).  Bonuses are considered discretionary, and thus excludable

---

[8] California law similarly provides for the exclusion of discretionary bonuses.  *See* DLSE Manual § 49.1.2.4(3); *see also* DLSE Manual § 49.1.1 ("In California, as with the federal FLSA, overtime is computed based on the regular rate of pay.  The regular rate of pay includes many different kinds of remuneration, for example:  hourly earnings, salary, piecework earnings, commissions, certain bonuses, and the value of meals and lodging."); DLSE Manual § 35.7 (non-discretionary bonuses must be calculated into regular rate of pay); 1991.03.06 DLSE Opinion Letter, at 1, n.1 (explaining that discretionary bonuses are excludable from the calculation of the "regular rate").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 22982314.1

12

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1    from the regular rate calculation, "if . . . both the fact that payment is to be made and the amount of

2    the payment are determined at the sole discretion of the employer at or near the end of the period

3    and not pursuant to any prior contract, agreement, or promise ***causing the employee to expect such***

4    ***payments*** regularly."  29 U.S.C. § 207(e)(3)(a); *see also* 29 C.F.R. §§ 778.208, 778.211.

5         Discretionary bonuses are ***not*** included in the "regular rate of pay." *See Rubin v. Wal-Mart*

6    *Stores, Inc.*, 599 F. Supp. 2d 1176, 1178 (N.D. Cal. 2009) (explaining that for purposes of

7    calculating the "regular rate," employer should include "promised bonuses" but not "discretionary

8    bonuses"); *Zator v. Sprint/United Mgmt. Co.*, 2011 WL 1157527, at *3-*4 (S.D. Cal. 2011)

9    (dismissing the plaintiffs' state law claim that overtime was improperly calculated, because "while

10   employees may have hoped to win the awards, they weren't working towards a promised reward");

11   *Brown v. Nipper Auto Parts & Supplies, Inc.*, 2009 WL 1437836, at *7 (W.D. Va. 2009) (finding

12   bonuses discretionary, because although the bonuses were paid under certain conditions, employees

13   had not been promised to be paid such bonuses beforehand and thus the employer had sole

14   discretion as to whether and in what amount these bonuses were paid).

15        In addition, under the FLSA, when a prize is awarded for activities beyond the scope of

16   his/her customary duties the facts and circumstances will determine whether the prize or award is

17   included in the regular rate.  29 C.F.R. § 778.332.  Factors to consider in this analysis include:  (1)

18   the amount of time spent by the employee in competing; (2) the relationship between the contest

19   activities and the employee's usual work; (3) whether the competition involves work usually

20   performed by other employees for employers; and (4) whether the employer specifically urges the

21   employee to participate in the contest activities or led the employee to believe that the employee

22   will not be promoted unless he or she participates.  *Id.*  The DLSE has opined that prizes should be

23   evaluated in the same manner as a bonus.  *See* 1987.02.17 DLSE Opinion Letter.

24        A 1996 Opinion Letter issued by the United States Department of Labor DOL ("DOL")

25   interpreting FLSA regulations opined that the value of a car won by an employee in a drawing need

26   not be included in the employee's regular rate of pay.  1996.08.06 DOL Opinion Letter, 1996 WL

27   1031796, at *1.  At issue was an employer's proposed plan to enter employees with perfect

28   attendance into a drawing, the prize for which would be a new car.  In determining that the value of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 22982314.1

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1   the car need not be included in the employee's regular rate, the DOL distinguished the drawing

2   from gifts or prizes paid to employees for "perfect attendance," which would normally be included

3   in the employee's regular rate of pay under 29 C.F.R. § 778.331.  The DOL stated that "we presume

4   from the large value of the prize that an employee's likelihood of winning the prize is very small."

5   It then stated that "[g]iven these circumstances, we would not assert that any prize awarded under

6   the lottery drawing conditions described in your letter would have to be included in calculating the

7   regular rate for the employee selected for the award."  The DOL opined that the fact that "the

8   employee simply becomes eligible to participate in a drawing or lottery for the prize" took the

9   drawing and prize out of the scope of the regulation and that it did not need to be included in the

10  regular rate.

11      Applying these guidelines shows that determinations regarding whether the prizes at issue

12  were discretionary cannot be made on a common, classwide basis.  If a store failed to set standards

13  for receipt of a Bravo card and the employee had no prior expectation of receiving a card, then the

14  prize is, by definition, discretionary because the employee had no expectation of receiving a chance

15  to join the drawing (fact of payment to him/her) or knowledge of whether he/she would win

16  anything at all (the specific amount of expected payment to him/her).  Thus, analysis of the

17  circumstances surrounding receipt of a Bravo card in a particular store or facility is necessary to

18  make determination as to whether a particular prize is discretionary.

19      Further, even if the circumstance surrounding receipt of a Bravo card indicate that receipt of

20  a card was non-discretionary in a particular instance (*e.g.*, the employee knew what would entitle

21  him/her to a card), the contingent nature of the drawing could make the prize discretionary.  For

22  example, an employee may have no prior knowledge of when or how often a drawing might be held

23  (thereby establishing absence of expectation of the fact of payment).  Further, if the chance of

24  winning was low, the individual employee had no prior expectation that he would receive anything,

25  and thus the employee knew neither the fact of payment to him/her or the specific amount he/she

26  would receive.  For example, if the employee has only one card in a drawing out of 75 cards, the

27  employee cannot have a reasonable expectation regarding either the fact or amount of a payment to

28  him/her (*i.e.*, it is likely that he/she would receive nothing).  Thus, to determine whether any

Morgan, Lewis &
Bockius LLP
Attorneys At Law
Los Angeles

DB2/ 22982314.1

14

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

specific prize is discretionary, the Court would need to examine the following: (1) whether the individual facility set standards and/or expectations for receipt of a Bravo card which would make the fact of receipt of the card known; (2) if the circumstances giving rise to the receipt of the card were non-discretionary, then whether the facility held the drawing with known frequency; and (3) whether the likelihood of winning any particular drawing was high enough to provide a reasonable expectation of winning a prize.

### 2. Provine's Overtime Claim Is Not Susceptible to Common Proof

In order to prevail on his overtime claim, Provine must establish that the Bravo prize is a non-discretionary bonus. This determination, however, cannot be decided through common proof. *Dukes* clarifies that courts may analyze evidence relating to the merits of the case in determining if class certification is appropriate:

> Frequently that "rigorous analysis" . . . will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. "[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."

*Dukes*, 131 S. Ct. at 2551-52; *see also Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 947 n.15 (9th Cir. 2009); *Garcia v. Sun Pacific Farming Co.*, 2008 WL 2073979, at *13 (E.D. Cal. 2008), *aff'd*, 359 Fed. Appx. 724 (9th Cir. 2009) ("A preliminary inquiry in to the merits is sometimes necessary to make a meaningful determination of class certification issues."). *Dukes* expressly rejects Provine's reliance on *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (Mot. at 3), for the proposition that a merits inquiry is impermissible. *Dukes*, 131 S. Ct. at 2552 n.6.

Provine asserts that there is one "common question" – whether Office Depot should have included the Bravo prize into the regular rate calculation. (Mot. at 5.) The purported "common question" Provine poses, however, does not have a common, classwide answer. Thus, it does not differ, in principle, from the "common questions" that *Dukes* found insufficient. As demonstrated by Office Depot's evidence, whether a specific prize should be included in the regular rate calculation for an individual employee requires individualized analysis of the circumstances surrounding the award of the winning card and the individual drawing to determine liability. Thus, no common, classwide answer to the question of whether a Bravo prize should be included in the regular rate exists.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1    Provine has presented no evidence regarding whether specific criteria existed to receive a

2    Bravo card or any other factors related to the receipt of a Bravo card.  As demonstrated by Office

3    Depot's evidence, receipt of the Bravo card (which has no cash or other monetary value) in and of

4    itself is often discretionary within the meaning of applicable regulations.  An employee may not

5    know if he or she will receive a card, and has no reasonable expectation that he or she will receive a

6    card for any particular conduct.  Moreover, even if an employee receives a Bravo card, the

7    employee will likely receive nothing.  The card represents nothing more than a relatively small

8    chance of winning a prize, if and only if the card is actually drawn out of the box if and when a

9    drawing actually occurs.  The employee may win a $50 prize, or he or she could win nothing at all.

10   An employee's chance of winning further depends on the total number of Bravo cards that were in

11   the drawing, how many cards the employee had in the drawing, and some luck that his or her card

12   will be pulled.  Moreover, the frequency of the drawings is entirely up to the discretion of the

13   individual managers.  Some locations – like the Fremont warehouse and BSD – do not even

14   conduct drawings.  To put it simply, employees never know if they will receive a Bravo card in the

15   first place, employees never know if a drawing will take place, and employees never know if they

16   will get money once they receive a Bravo card and a drawing actually occurs.  Thus, in many

17   circumstances the employee has no prior knowledge of the fact or receipt of a card, and no prior

18   knowledge or promise of the fact of payment to him/her or the amount of payment to him/her (the

19   employee does not know if or when there will be a drawing or if he/she will receive anything at all).

20   Thus, multiple levels of discretion and chance stood between whether an employee even received a

21   Bravo card and, if he or she did, whether he or she won the drawing for the $50 prize.

22   The primary and predominate individualized issues in the case – whether any individual had an

23   expectation of receiving a Bravo card, the frequency of the drawing, and the chance of any individual of

24   winning the drawing – cannot be resolved as to all putative class members on a common basis through

25   common evidence.  Office Depot has presented compelling evidence that negates any finding of

26   commonality as to the "common question" posed by Provine.  Thus, Provine has failed to establish

27   commonality under the standards articulated in *Dukes* with respect to his overtime claim.

**B.**    <u>**Provine Cannot Establish Rule 23(a) Adequacy**</u>

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 22982314.1

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1    Rule 23(a)(4) permits class certification only if "the representative parties will fairly and

2  adequately protect the interests of the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th

3  Cir. 1998).  Due process requires that class representatives be more than *pro forma* participants.  *In*

4  *re Goldchip Funding Co.*, 61 F.R.D. 592, 594 (M.D. Pa. 1974); *see also In re Cal. Micro Devices*

5  *Sec. Litig.*, 168 F.R.D. 257, 260 (N.D. Cal. 1996) (named representative's failure to monitor class

6  counsel is functional equivalent of class counsel serving as class representative, which is

7  unacceptable conflict of interest).  Provine bears the burden of proving adequacy, *Cobb v. Avon*

8  *Prods., Inc.*, 71 F.R.D. 652, 654 (W.D. Pa. 1976), and he does not meet this burden by merely being

9  a member of the proposed class.  Instead, a plaintiff must show he will be able to satisfactorily

10  represent the interest of the proposed class:  "The class is entitled to a representative who is more

11  than 'a key to the courthouse door dispensable once entry has been effected.'"  *Weisman v.*

12  *Darneille*, 78 F.R.D. 669, 671 (S.D.N.Y. 1978).

13    Here, Provine cannot sustain this burden.  Provine testified that he cannot recall if he ever

14  saw the SAC prior to his deposition.  Provine Depo. 33:23-34:9 (EA 117-118).  Nor is he aware of

15  any Office Depot employee who supports him bringing this lawsuit.  Provine Depo. 40:7-9 (EA

16  121).  Provine testified that he never spoke with anyone at Office Depot about his lawsuit (Provine

17  Depo. 29:3-5, 29:15-17, 29:24-30:1, 40:4-6 (EA 113-114, 121)); thus, he has *no knowledge* if any

18  other putative class members were harmed or complained.  In addition, Provine conceded that he

19  never worked at a warehouse, in BSD, or at any store other than Antioch.  Provine Depo. 28:17-19,

20  29:12-14, 29:21-23 (EA 112-113).  Nor does he know whether the warehouses or BSD even used

21  the Program; in fact, he did not even know what BSD was.  Provine Depo. 29:18-20, 29:21-23,

22  30:2-5 (EA 113-114).  Furthermore, Provine's claim for unpaid overtime amounts to less than

23  $0.25.  This very small amount at issue subjects him to unique defenses, such as whether this

24  amount should be excluded as *de minimis*.  (*See* Section IV.C, below.)  Moreover, Provine cannot

25  serve as an adequate representative of the class as his credibility is severely compromised by him

26  appearing on the agreed upon date for his deposition unable to provide testimony due to his intake

27  of Percocet and Morphine.  Provine Depo. 4:4-24 (EA 98).  Accordingly, Provine cannot

28  adequately represent the proposed class.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 22982314.1

17

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## C.   Provine Cannot Satisfy Rule 23(b)(3) Predominance

Rule 23(b)(3) requires a plaintiff to present substantial evidence showing that issues common to the class "predominate" over issues unique to individual class members. "[T]he predominance inquiry focuses on 'the relationship between the common and individual issues' and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Vinole*, 571 F.3d at 944; *see also In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009). To establish predominance, "a plaintiff must show that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (superseded by statute on other grounds as stated in *Attenborough v. Construction & Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82 (S.D.N.Y. 2006)). A Rule 23(b)(3) action is inappropriate where, as here, "the main issues in a case require the separate adjudication of each class member's individual claim or defense." *Zinser*, 253 F.3d at 1189. To determine whether common issues predominate, this Court must first examine the substantive issues raised by Provine and then inquire into the proof relevant to each issue. Here, this examination shows that individual issues predominate.

In order to determine whether a Bravo prize should have been included in the regular rate for overtime purposes, the Court must first determine whether the prize was discretionary. As discussed above in Section IV.A, this inquiry, on its face, necessarily is an individual, fact-specific inquiry as to each prize awarded. Provine submits no evidence demonstrating that the Program was implemented uniformly across all of Office Depot's facility types, let alone uniformly within a facility type. Nor has Provine presented any evidence regarding any factors related to the receipt of the Bravo cards, the frequency of the drawing, or the chances of winning a drawing across the various facility types and locations. All of these factors are relevant to determining whether a given prize was discretionary, and Office Depot's evidence shows broad variation regarding all of these circumstances with respect to any specific prize awarded.

In addition, contrary to Provine's assertion that determining class membership is as simple as searching Office Depot's payroll and time records to determine which non-exempt employees

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 22982314.1

18

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1  received Bravo prizes and worked overtime, determination of liability requires individual inquiry.

2  Provine does not assert (nor could he) that all putative class members received a Bravo prize based

3  on a drawing covering a time period where they also worked overtime.  Provine asserts that the

4  Bravo prize is tied to a specific month.  Office Depot's evidence, however, shows that drawings are

5  not always held monthly, and there is no common evidence as to the frequency of a drawing.

6       The prize is typically paid in the next paycheck following a drawing, but that check may

7  cover a period that includes time after the drawing.  Without knowing the period between the

8  drawing the employee won and the prior drawing (*i.e.*, the drawing's frequency), the Court will not

9  know the period to search for overtime work.  For example, if a store handed out cards for two

10  months before holding a drawing, according to Provine's theory, the "earnings" period for the

11  winner would be two months during which the winner received a card or cards.[9]  The Court would

12  need to determine this earnings period (which cannot be decided on a common basis) and determine

13  whether there was any overtime work during this period.  If there was overtime work, the Court

14  would need to divide the $50 prize by the number of hours worked during the earnings period and

15  multiply by 1.5 to determine the overtime rate.  Determination of the overtime rate would be

16  individualized to each employee for each prize.  There is no common or simple way to determine

17  any of the following:  (1) the earnings period; (2) whether overtime was worked during the earnings

18  period; (3) the number of hours worked during the earnings period; (4) the number of overtime

19  hours worked during the earnings period; (5) the regular rate for any prize ($50 divided by the

20  hours worked by the employee during the earnings period); or (6) the overtime allegedly owed (the

21  regular rate times overtime hours worked).  All of these issues would need to be determined

22  individually for each of thousands of separate prizes.

23       Even assuming that Provine was correct and prizes were non-discretionary (which he is not),

24  the Court would have to determine as to each non-exempt employee whether he or she worked

25  overtime during the "earnings period" preceding the drawing, if so, how much overtime, and how

26  many total hours the employee worked.  The Court would then need to determine the individual

27

28

[9] *See* 29 C.F.R. § 778.209(b) (requiring that a non-discretionary bonus be allocated over the "earnings" period to include it in the regular rate).

Morgan, Lewis & Bockius LLP
Attorneys At Law
Los Angeles

DB2/ 22982314.1

19

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1  overtime rate for each prize.  In order to accomplish this individualized analysis, the earnings period

2  for each individual prize would need to be determined and the individual time records of the

3  winning employee analyzed for that earnings period.  Indeed, Provine testified that he could not

4  determine whether any of the Bravo prizes he received were earned during a month in which he

5  worked overtime.  Provine Depo. 20:16-20, 25:9-15, 37:6-38:8 (EA 107, 110, 119-120).

6         Also, even if the Court were to conclude that all Bravo prizes were non-discretionary (which

7  it cannot without analysis of the individual circumstances of each award), there would need to be an

8  additional individual determination before an individual liability finding:  whether any particular

9  prize would result in an amount owed that is more than *de minimis*.  ***De minimus exclusions from***

10 ***the regular rate that do not significantly impact the overtime owed need not be included in the***

11 ***regular rate***.  29 C.F.R. § 548.3(e) (approving exclusions that do not affect the employee's

12 overtime compensation by more than 50 cents a week on average for the overtime weeks); *Lindow*

13 *v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984) (explaining that "if the aggregate claim is

14 insubstantial, we may dismiss it as groundless and unreasonable"); *Anderson v. Mt. Clemens*

15 *Pottery Co.*, 328 U.S. 680, 692 (1946) (stating that "[s]plit-second absurdities are not justified by

16 the actualities of working conditions. . . . It is only when an employee is required to give up a

17 substantial measure of his time and effort that compensable working time is involved."); 29 C.F.R.

18 § 548.305 (recognizing the *de minimis* impact of an employer rewarding its employees with modest

19 bonuses or prizes as a nominal cost to be excluded from the regular rate, stating that "[e]xamples of

20 payments which may be excluded [from the regular rate] are . . . bonuses or prizes of various sorts"

21 that do not increase total compensation by more than $0.50 per week).

22        Here, to determine whether failure to include a prize in the regular rate as to any individual

23 employee was *de minimis* would necessitate an individual inquiry.  For instance, there were just two

24 months in which Provine received a prize.  If the prizes were included in his regular rate, it would

25 have resulted in him receiving an ***additional $0.23 for his entire employment***.  Thus, Provine's

26 prizes clearly fall into the *de minimus* category and were properly excluded from the regular rate

27 calculation, even if considered non-discretionary.  The *de minimus* determination as to any specific

28 prize must be evaluated on an individualized basis.  The plethora of important individualized issues

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

20

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

necessary to determine whether each prize resulted in any unpaid overtime would overwhelm any individual issues.  Thus, Provine cannot satisfy the predominance requirement of Rule 23(b)(3).

### D.    A Class Action Is Not a Superior Method of Adjudication

Provine also cannot establish that a class action is superior, as is required by Rule 23(b)(3). *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1231-32 (9th Cir. 1996).  Where each class member must litigate separate issues to establish the right to recover, a class action is not superior. *Jimenez v. Domino's Pizza*, 238 F.R.D. 241, 253 (C.D. Cal. 2006) (holding that a trial "would be unmanageable because of the individual inquiries required"); *Zinser*, 253 F.3d at 1192.  Also, the party seeking certification must show "a suitable and realistic plan for trial of the class claims." *Zinser*, 253 F.3d at 1198.  That plan cannot deprive a defendant of its right to assert its defenses as to each class member.  *See, e.g.*, *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 236 n.8 (9th Cir. 1974).

As explained above, determining liability to any particular employee would require examination of a myriad of individual issues.  Provine has not identified even one other employee who believes that he/she was injured.  Regardless, even if other employees wanted to bring claims, Office Depot's evidence makes clear that each trial would be individual.  Courts have routinely held that the necessity for mini-trials negates class treatment as a superior method of adjudication. *Brown v. Federal Express Corp.*, 249 F.R.D. 580, 587 (C.D. Cal. 2008) ("A class action addressing the varied individual factual issues raised by Plaintiffs is likely to be unmanageable."); *Duran v. U.S. Bank Nat'l Ass'n*, 2012 Cal. App. LEXIS 107, at *141-*142 (2012) (holding that absence of a manageable trial plan mandated reversal of a certification order).

Further, Office Depot has a due process right to establish the absence of liability as to each employee.  *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970) ("[W]here important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."); *Jimenez*, 238 F.R.D. at 253 (noting that the employer has the right to establish the absence of liability as to each class member); *Mendoza v. Home Depot, USA, Inc.*, 2010 U.S. Dist. LEXIS 13025, at *29-*31 (C.D. Cal. 2010); *Duran*, 2012 Cal. App. LEXIS 107, at *102 (holding that a trial plan cannot deprive an employer from proving individualized defenses).  *Dukes*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/22982314.1

21

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

acknowledged the due process right to "individualized determinations of each employee's eligibility for backpay," explaining that "a class cannot be certified on the premise that Wal-Mart will not be entitled to litigate its statutory defenses to individual claims." *Dukes*, 131 S. Ct. at 2546. Provine does not proposed a manageable trial plan that preserves Office Depot's right to establish its defense as to each employee while establishing liability and damages on a classwide basis. Thus, Provine cannot establish superiority.[10]

## V. PROVINE CANNOT SATISFY RULE 23 REQUIREMENTS FOR HIS WAITING TIME PENALTIES CLAIM

Provine concedes that his waiting time penalties claim under California Labor Code Section 203 is derivative of his underlying overtime claim. (Mot. at 11.) Therefore, this Court should deny class certification of this claim for the reasons explained above.

Provine's waiting time penalties claim also raises an additional individual issue necessitating denial of certification – whether each individual penalty at issue is unconstitutionally confiscatory. Labor Code Section 203 provides a penalty of up to thirty days continued wages, for any "willful" failure to pay wages owed at the time of termination. Cal. Labor Code § 203(a). Both the Federal and California Constitutions limit the maximum penalty assessment under their respective provisions guaranteeing due process and prohibiting excessive fines. *See People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 37 Cal. 4th 707, 728 (2005); *see also United States v. Citrin*, 972 F.2d 1044, 1051 (9th Cir. 1992) (observing that a statutory penalty violates due process where "the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable"); *State Farm Mutual Auto Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) ("[F]ew awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."); *Southwestern Telegraph & Tel. Co. v. Danaher*, 238 U.S. 482 (1915) (concluding that the defendant was deprived of Constitutional rights when a

---

[10] Moreover, a class action is not superior if "any realistic alternative exists." *Valentino*, 97 F.3d at 1234-35. Realistic alternatives include administrative remedies. *See Kamm v. California City Dev. Co.*, 509 F.2d 205, 211 (9th Cir. 1975) (courts should consider "whether any administrative methods of settling the dispute exists"). Here, employees have an efficient, inexpensive, and effective forum to resolve any individual disputes through the DLSE. *See, e.g., Cuadra v. Millan*, 17 Cal. 4th 855, 858, 869 (1998); *Lolley v. Campbell*, 28 Cal. 4th 367, 372 (2002). In *Jimenez*, this Court found that because a DLSE hearing "present[s] a viable alternative" to court proceedings, class certification under Rule 23(b)(3) was inappropriate. *Jimenez*, 238 F.R.D. at 252-54. Thus, class treatment should likewise be denied here because the DLSE forum affords full and prompt relief.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1   $100 per day penalty resulted in a $6,300 judgment where actual damages were small).

2          When, as here, a penalty statute is based on an automatic formula, courts must use discretion

3   to limit penalties to constitutionally permissible amounts.  *See Hale v. Morgan*, 22 Cal. 3d 388

4   (1978).  A court is obligated to consider "(1) the defendant's culpability; (2) the relationship between

5   the harm and the penalty; (3) the penalties imposed in similar statutes; and (4) the defendant's ability

6   to pay."  *Lockyer*, 37 Cal. 4th at 728.  In addition, the defendants' "good faith" and "equitable

7   considerations" are relevant to whether a penalty is excessive.  *Id.* at 730.

8          Here, the Court would need to identify each individual prize situation where a penalty raises

9   the specter of a constitutional violation.  In those cases, the Court would need to apply the

10  Constitutional analysis,[11] requiring individual review of the harm that befell the unique employee

11  and how the proposed penalty compares, and whether a *de minimis* overtime pay shortfall justifies

12  no more than a *de minimis* penalty.  Thus, certification should be denied on the penalty claim.  *See,*

13  *e.g.*, *Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655, 681 (N.D. Ga. 2001) (assessment

14  of punitive damages requires individual inquiry, making class certification unsuitable).

15  **VI.    PROVINE CANNOT SATISFY RULE 23 REQUIREMENTS FOR HIS WAGE
        STATEMENT CLAIM**

16         Provine's wage statement claim is wholly derivative of his overtime claim.  Provine Depo.

17  30:16-31:3, 31:15-32:6, 32:10-19 (EA 114-116); *see also* Mot. at 1 (stating that Provine's claims

18  are premised on the allegation that Office Depot failed to include the Bravo prize in the regular

19  rate). Where a plaintiff's wage statement claim is based on an overtime claim, if the overtime claim

20  cannot be certified, neither can the wage statement claim.  *See, e.g., Kimoto v. McDonald's Corp.*,

21  2008 U.S. Dist. LEXIS 86218, at *20 (C.D. Cal. 2008) (denying certification of "wholly derivative"

22  wage statement claim where underlying claims were not appropriate for class treatment); *Porch v.*

23  *Masterfoods USA, Inc.*, 685 F. Supp. 2d 1058, 1075 (C.D. Cal. 2008) ("[W]hen a record keeping

24  claim depends upon overtime . . . claims that were denied, the record keeping claim should also be

25  denied.").

26         In addition, Provine's wage statement claim is not amenable to class treatment because

27

28
_____
[11] Courts deny certification when it may create thorny constitutional issues by exposing defendants to excessive
punishment from aggregation of individual claims.  *Kline v. Coldwell Banker & Co.*, 508 F.2d 226, 234-35 (9th Cir. 1974).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 22982314.1

23

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1   proof of actual "injury," as required by Labor Code Section 226(e), is highly individualized.  Labor

2   Code Section 226(e) provides a penalty only to an employee **who suffers injury** from a failure to

3   provide an accurate itemized wage statement.  *See* Cal. Lab. Code § 226(e) ("[A]n employee

4   **suffering injury** as a result of a knowing and intentional failure by an employer to comply with

5   subdivision (a) is entitled to [penalties].").  Thus, to prevail on his wage statement claim, Provine

6   must prove that he and each putative class member suffered injury as a result of some failure to

7   comply with Labor Code Section 226(a) requirements.

8        Because the "injury" requirement implicates a variety of individual questions, courts

9   routinely deny certification of wage statement claims.  *See, e.g., Villacres v. ABM Industries, Inc.*,

10   384 Fed. Appx. 626, 627-28 (9th Cir. 2010) (affirming denial of class certification, holding that the

11   plaintiff does not aver class members suffered common actual injuries stemming from the alleged

12   wage statement deficiencies); *Jasper v. C.R. England, Inc.*, 2009 U.S. Dist. LEXIS 34802, at *15

13   (C.D. Cal. 2009) (denying class certification holding that "[t]he questions of . . . how each class

14   member was injured is likely to require individualized proof."); *Blackwell v. SkyWest Airlines, Inc.*,

15   245 F. R. D. 453, 468 (S.D. Cal. 2007) (denying class certification of Section 226 claim).

16        Adjudication of Provine's Section 226(e) claim on a classwide basis would require a unique

17   and individualized determination as to each former employee regarding whether and to what extent

18   that individual actually suffered injury as a result of an alleged wage statement violation.  This

19   highly individualized question prevents class certification.  Provine asserts that he and the class

20   members suffered injury, because they are required to engage in discovery and perform

21   mathematical computations to determine the amount of wages owed.  This argument has been

22   rejected.[12]  *See Price v. Starbucks*, 192 Cal. App. 4th 1136, 1143 (2011) (holding that the plaintiff's

23   claimed injury – "confusion and possible underpayment of wages due" resulting from a lack of

24

25   _____

[12] Courts confirm that before there can be any recovery on a wage statement claim, there must be a showing of "injury" that is more than the failure to comply. *See, e.g., Villacres*, 384 Fed. Appx. at 627-28 (granting summary judgment and holding that it is not enough that a plaintiff simply allege that they did not receive a compliant wage statement); *Jasper*, 2009 U.S. Dist. LEXIS 34802, at *15 (stating that the plaintiff must show resulting injury in order to recover under section 226(e)); *Reber v. AIMCO/Bethesda Holdings, Inc.*, 2008 U.S. Dist. LEXIS 81790, at *25 (C.D. Cal. 2008) (summarily adjudicating Section 226 claim, in part because "the plaintiffs failed to dispute that they were not injured by their employer's failure to provide compliant wage statements"; *Elliot v. Spherion Pacific Work, LLC*, 572 F. Supp. 2d 1169, 1180-81 (C.D. Cal. 2008), *aff'd* 368 Fed. Appx. 761 (9th Cir. 2011).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 22982314.1

24

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1  required information – was insufficient to constitute the type of "injury" contemplated by the

2  statute).  As in *Price*, the wage statements contain all of the information necessary for Provine to

3  determine if he was paid correctly.  Moreover, at his deposition, ***Provine concedes that he never***

4  ***suffered any harm as a result of the wage statements that he received***.  Provine Depo. 33:8-22

5  (EA 117).  Provine provides no evidence as to how he, let alone the putative class members, were

6  damaged by the alleged failure to provide accurate wage statements or how Provine can show injury

7  on a classwide basis.  Because the "injury" requirement prescribed by Section 226(e) implicates a

8  variety of individual questions, Provine's Section 226 claim should not be certified.

9  **VII.   THE DERIVATIVE UCL CLAIM ALSO REQUIRES INDIVIDUAL INQUIRIES**

10      Provine's UCL claim derives entirely from his overtime claim (Mot. at 10) and, thus, should

11  not be certified for the reasons discussed above.  *See, e.g., Krantz v. BT Visual Images, LLC*, 89

12  Cal. App. 4th 164, 178 (2001) (holding that where UCL claim is dependent on other claims, the

13  UCL claim must be dismissed when the other claims are dismissed); *Prachasaisoradej v. Ralph's*

14  *Grocery Co.*, 42 Cal. 4th 217, 244 (2007) (holding that derivative UCL claim fails with underlying

15  claim); *Cornn v. UPS*, 2005 U.S. Dist. LEXIS 47052, at \*37 (N.D. Cal. 2005) (noting that UCL

16  claim is suitable for class treatment "only to the extent that it is derivative of other claims for which

17  class certification has been granted"); *Rubin v. Wal-Mart Stores, Inc.*, 599 F. Supp. 2d 1176, 1179

18  (N.D. Cal. 2009) (holding that where Labor Code claims failed, derivative claim for unfair

19  competition also failed).  Thus, Provine's UCL allegations do not, in and of themselves, create any

20  common issues suitable for adjudication on a classwide basis.

21  **VIII.   CONCLUSION**

22      For all of the foregoing reasons, Office Depot respectfully requests that this Court deny

23  Provine's motion for class certification in its entirety.

    Dated:  February 24, 2012                MORGAN, LEWIS & BOCKIUS LLP

24

25                                           By   /s/ Jennifer L. Bradford
                                                Jennifer L. Bradford
26                                              Attorneys for Defendant
                                                OFFICE DEPOT, INC.

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 22982314.1

25

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION