IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD DAVID PROVINE, individually and on behalf of other persons similarly situated,<br><br>        Plaintiffs,<br>v.<br><br>OFFICE DEPOT, INC.,<br><br>        Defendant.<br>_____/ | No. C 11-00903 SI<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |

Presently pending before the Court are defendant's motion for summary judgment and plaintiff's motion for class certification. For the reasons set forth below, the Court DENIES defendant's motion and GRANTS plaintiff's motion.

**BACKGROUND**

Defendant Office Depot has offered a program for its employees known as the Bravo Award Program since at least January 2007. Declaration of Jennifer L. Bradford ("Bradford Decl."), Ex. 1 at 22. The Bravo Program awards employees for superior work performance. *Id*. at 30. It is administered in all of defendant's facilities under the same general procedures described in Office Depot's "People Manual." *Id*. at 31. All non-management associates are eligible to participate in the Bravo Program. Bradford Decl., Ex. 9 at 4. Managers can award Bravo Cards for performance above

and beyond expectations. *Id*. Managers in each store have leeway over when to award Bravo Cards to employees. *Id*. Bravo Program procedures outline a non-exhaustive list of areas in which employee conduct may warrant the award of a Bravo Card. *Id*. at 4-5. Awarded Bravo Cards are placed in a container. *Id*. at 5. At the end of the month, there is a drawing for a cash prize of $50, which is a "Bravo Award" paid in the winning employee's next paycheck. *Id*. at 5.

Plaintiff Howard David Provine worked at an Office Depot retail store in Antioch, California from June 2010 to December 2010. Bradford Decl., Ex. 2 at 12. During his entire employment, plaintiff was paid on an hourly basis and eligible to receive Bravo Awards. *Id*. at 13. Plaintiff had no expectation that he would receive any Bravo Cards, and no expectation that he would win a Bravo Award if he did receive any cards. *Id*. at 18, 27. Nevertheless, plaintiff won two Bravo Awards, one in July 2010, and one in November 2010. *Id*. at 23-25. Plaintiff was paid the $50 Bravo Award in his paychecks in August 2010 and December 2010. *Id*.

During the month of July, plaintiff worked 101.28 total hours including 0.25 hours of overtime. Bradford Decl., Ex. 6; Ex. 7 at 1. During the month of November, plaintiff worked 114.02 hours including 0.0667 hours (4 minutes) of overtime. Bradford Decl., Ex. 6; Ex. 8 at 1. Defendant does not factor Bravo Awards into the calculation of an employee's regular rate of pay for the purposes of computing overtime. If defendant had included Bravo Awards in that calculation, plaintiff would be entitled to nineteen cents of additional overtime pay for the month of June and four cents for the month of November. Bradford Decl., ¶¶ 10-11. Defendant does not pay an overtime premium on Bravo Awards themselves.

On January 19, 2011, plaintiff filed his original complaint against defendant. On July 18, 2011, plaintiff amended the complaint, and on December 14, 2011, plaintiff filed the second amended complaint ("SAC"). The SAC alleges five causes of action against defendant: (1) failure to pay overtime wages, (2) failure to provide accurate wage statements, (3) unfair competition under the California Unfair Competition Law ("UCL"), (4) failure to pay all wages owed upon termination, and (5) civil penalties under the California Private Attorney General Act ("PAGA"). Defendant seeks summary judgment against plaintiff on all of his individual claims, and plaintiff seeks class certification of the first four claims.

2

**LEGAL STANDARDS**

**I. Summary judgment**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See id.* at 325.

The burden then shifts to the non-moving party to "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id.* Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979); *see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (observing that there is no genuine issue of fact "where the only evidence presented is 'uncorroborated and self-serving' testimony" (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996))). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(c). Hearsay statements found in affidavits are inadmissible. *Fong v. Am. Airlines, Inc.*, 626 F.2d 759, 762-63 (9th Cir. 1980).

**II.      Class certification**

Class certification is warranted where a plaintiff demonstrates that all of the requirements of Federal Rule of Civil Procedure 23(a) are satisfied and at least one of the requirements of Rule 23(b) is satisfied. *See* Fed. R. Civ. P. 23; *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011). Rule 23(a) provides that a court may certify a class only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

In addition to demonstrating that the Rule 23(a) requirements are met, plaintiff must establish one or more of the following grounds for maintaining the suit as a class action pursuant to Rule 23(b): (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b).

**DISCUSSION**

**I.      Defendant's motion for summary judgment**

    **A.      The Bravo Awards are not discretionary**

Defendant contends that it was not required to include Bravo Awards in plaintiff's regular rate of pay because Bravo Awards are discretionary. California law requires employers to pay non-exempt employees for any hours worked in excess of eight hours in one workday and forty hours in one workweek "at the rate of no less than one and one-half times the regular rate of pay." Cal. Labor Code § 510. The parties agree that under the FLSA and California law, discretionary bonuses are excluded from the regular rate of pay. *See* 29 U.S.C. § 207(e)(3); DLSE Enforcement Policies & Interpretations Manual § 49.12 (2002) § 49.1.2.4 (3) (DLSE Manual).[1] Bonuses are discretionary if "both the fact that

---

[1] The California Labor Code does not define the term "regular rate of pay." The California Division of Labor Standards Enforcement ("DLSE") recommends that courts look to the Fair Labor Standards Act ("FLSA") and adopt its definition of "regular rate of pay." DLSE Manual § 49.12; *see also Advanced-Tech Security Serv., Inc. v. Superior Ct.*, 163 Cal. App. 4th 700, 707 (2008) (explaining

4

payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly." 29 U.S.C. § 207(e)(3)(a); *see also* 29 C.F.R. § 778.211 ("In order for a bonus to qualify for exclusion as a discretionary bonus under section [20]7(e)(3)(a) the employer must retain discretion both as to the fact of payment and as to the amount until a time quite close to the end of the period for which the bonus is paid."); *see also* DLSE Manual § 49.1.2.4 (3) ("Sums paid in recognition of services performed during a given period" are discretionary if "both the fact that payment is to be made and the amount of payment are determined at the sole discretion of the employer" and "not pursuant to any prior contract, agreement or promise.").

Based on the text of the FLSA and accompanying interpretive regulation, and the DLSE Manual, the Court finds that because it is undisputed that Bravo Awards are always $50 dollars, they are not discretionary. Defendant argues that because Bravo Cards are awarded at the discretion of its store managers, and because winning a Bravo Award is contingent on winning a random drawing from the Bravo Cards, Bravo Awards are by definition discretionary. The Court agrees that "the fact that payment [of the Bravo Award] is to be made . . . [is] determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly." 29 U.S.C. § 207(e)(3). However, the authority cited by defendant also requires that the *amount* of payment be discretionary in order for the bonus to be excluded from the regular rate of pay. In each of the cases on which defendant relies, both the fact and the amount of payment were under the discretion of the store manager. *See Alonzo v. Maximus, Inc*., No. 08-6755, 2011 WL 6396444, *9 (C.D. Cal. Dec. 5, 2011) ("MaxDollar bonuses were 'spot bonuses to employees who . . . made unique or extraordinary efforts' and were not awarded according to pre-established criteria or pre-established rates."); *see also Zator v. Spring/United Management Co.*, No. 09-935, 2011 WL 1157527, *3-5 (S.D. Cal. 2011) (holding that various benefits were not part of compensation under the FLSA and that there was no evidence of their worth or non-discretionary fact of payment); *Brown v. Nipper Auto Parts and Supplies, Inc*., No. 08-521, 2009 WL 1437836, *7 (W.D.

---

that California law looks to FLSA to determine what is excludable from compensation when calculating the "regular rate").

5

Va. May 21, 2009) (manager had "sole discretion as to whether and in what amount these bonuses were paid" and therefore bonuses were discretionary). Defendant has not identified, and the Court has not located, any cases in which the amount of payment was known in advance and the bonus in question was held to be discretionary under the FLSA or California law.

Defendant also cites an Opinion Letter from the Department of Labor, evaluating a proposed gift program where all employees who have had perfect attendance for a quarter are entered into a semi-annual drawing in which the winner receives a new car. Department of Labor Wage & Hour Division, Opinion Letter Fair Labor Standards Act (FLSA), 1996 WL 1031796 (Aug. 6, 1996). In the letter, the employer asked whether the value of the car would have to be included in winning employee's regular rate used in computing overtime. *Id*. The letter explained:

> As indicated in Section 778.331 of 29 C.F.R. Part 778 (copy enclosed) gifts or prizes awarded to employees for their efforts in improving quality, quantity, efficiency or attendance are paid as additional remuneration for employment. Thus, the value of gifts or prizes paid to employees for "perfect attendance" would normally be included in the employees' regular rate of pay.
>
> In your situation, however, the employee simply becomes eligible to participate in a drawing or lottery for the prize, and we presume from the large value of the prize that an employee's likelihood of winning the prize is very small. Given these circumstances, we would not assert that any prize awarded under the lottery drawing conditions described in your letter would have to be included in calculating the regular rate for the employee selected for the award.

*Id*.

The Court accords this opinion letter due deference as it is the Secretary of Labor's interpretation of its own regulation. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997); *In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig*., 481 F.2d 1119, 1129 (9th Cir. 2007). However, the opinion letter does not address whether a set, known value for a bonus renders it non-discretionary under the FLSA. While it is true, as defendant asserts, that the Bravo Program is "even more discretionary" as to the fact of payment than the program in the letter because it involves two separate layers of discretion or chance, the opinion letter does not state whether the value of the car is known in advance of the drawing. Instead, the letter focused on the dichotomy between the two parts of the bonus award procedure. The letter finds that in a situation where the method for granting a bonus is part known and part random, the bonus is discretionary where the randomization procedure makes the fact of payment unlikely, and therefore uncertain, that an employee will receive the bonus. To emphasize this point, the letter notes

6

1 that the presumed likelihood of winning the drawing is low, and hence overwhelms the non-
2 discretionary entry of the contestants into the lottery by a known procedure.

3 Accordingly, the Court concludes that even though the fact of receiving a Bravo Award is
4 discretionary, such awards are not "discretionary" under the California Labor Code because the amount
5 of payment was known to all employees in advance.

### B. *De minimis* defense

Defendant asserts that even if Bravo Awards are non-discretionary, the awards were nevertheless properly excluded from plaintiff's regular rate of pay because the total amount at issue is less than fifty cents. Defendant relies on 29 C.F.R. § 548.3(e), which provides that employers can exclude from an employee's regular rate of pay "additional payments in cash or in kind which, if included in the computation of overtime under the Act, would not increase the total compensation of the employee by more than 50 cents a week on the average for all overtime weeks (in excess of the number of hours applicable under section 7(a) of the Act) in the period for which such additional payments are made." 29 C.F.R. § 548.3(e).

Plaintiff contends that 29 C.F.R. § 548.3(e) does not apply because that section only applies to calculation of overtime pay in accordance with Section 7(g)(3) of the FLSA. Plaintiff contends that Section 7(g)(3) of the FLSA does not apply to employees like plaintiff with a single hourly rate of pay. Section 7(g)(3) applies to employees paid at a "basic rate" that is "substantially equivalent to the average hourly earnings of the employee." 29 U.S.C. § 207(g)(3); 29 C.F.R. § 548.2. Plaintiff argues that a "basic rate" under this section must necessarily be something other than a singular hourly rate of pay, otherwise the "basic rate" would always be exactly equal to the employee's "average hourly earnings" and Section 7(g)(3) would have no meaning.

The Court agrees with plaintiff. As explained in 29 C.F.R. § 548.100(a),

> The purpose of Section 7(g)(3) of the act, and subpart A of this part, is to provide an exception from the requirements of computing overtime at the regular rate, and to allow, under specific conditions, the use of an established "basic" rate instead. Basic rates are alternatives to the regular rate of pay under section 7(a), and their use is optional. The use of basic rates is principally intended to simplify bookkeeping and computation of overtime pay.

7

29 C.F.R. § 548.100(a). The regulations provide numerous requirements that an employer must satisfy in order to use a basic rate. For example Section 548.3, titled "Authorized basic rates," sets forth numerous conditions that "will be regarded as being substantially equivalent to the average hourly earnings of the employee . . . and may be used in computing overtime compensation for purposes of section 7(g)(3) and section 548.2." For example, one authorized basic rate is "a rate per hour which is obtained by dividing a monthly or semi-monthly salary by the number of regular working days in each monthly or semi-monthly period or hours in the normal or regular workday." 29 C.F.R. § 548.3(a).

Defendant has not cited any authority for the proposition that an employee earning a single hourly rate is an employee paid at a "basic rate" under Section 7(g)(3). The cases cited by defendant do not involve application of Section 7(g)(3) to an employee with a single hourly rate of pay. Further, the Court notes that even if Section 7(g)(3) and 29 C.F.R. § 548.3(e) applied to employees earning a single hourly rate, the regulations state that *de minimis* amounts can be excluded from the computation of overtime "upon agreement or understanding with the employee." Section 548.305, titled "Excluding certain additions to wages," states:

> Section 548.3(e) permits the employer, upon agreement or understanding with the employee, to omit from the computation of overtime certain incidental payments which have a trivial effect on the overtime compensation due. Examples of payments which may be excluded are: modest housing, bonuses or prizes of various sorts, tuition paid by the employer for the employee's attendance at the school, and cash payments or merchandise awards for soliciting or obtaining new business.

29 C.F.R. § 548.305(b); *see also id.* § 548.305(e) ("There are many situations in which the employer and employee cannot predict with any degree of certainty the amount of bonus to be paid at the end of the bonus period. . . . In such situations the employer and employee may agree prior to the performance of the work that a bonus will be disregarded in the computation of overtime pay if the employee's total earnings are not affected by more than $.50 a week on the average for all overtime weeks during the bonus period."). Here, defendant has not submitted any evidence showing that plaintiff and defendant agreed or understood that Bravo Awards would be excluded from the computation of overtime pay.

Accordingly, the Court denies defendant's motion for summary judgment on plaintiff's first claim for relief.

8

### C. UCL and civil penalties under PAGA

Defendant moves for summary judgment on plaintiff's UCL claim and claim for civil penalties under PAGA on the ground that those claims depend entirely on a finding that defendant violated the Labor Code by failing to include the Bravo payment into the regular rate calculation. Accordingly, for the reasons stated above, the Court denies defendant's motion for summary judgment as to those claims.

### D. Failure to pay all wages owed upon termination

In the fourth claim for relief, plaintiff seeks waiting time penalties under California Labor Code § 203 as a result of the purported failure to pay all of the overtime to him upon employment termination. Defendant moves for summary judgment on this claim, contending that a good faith dispute exists over whether the Bravo Award must be included in the regular rate calculation.

In order to recover waiting time penalties, the Court must find that the defendant "willfully" withheld wages. Cal. Labor Code § 203. "A willful failure to pay wages within the meaning of [that section] occurs when an employer intentionally fails to pay wages to an employee when those wages are due. However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203." Cal. Code Regs. Tit. 8, § 13520 (2012). A "good faith dispute . . . occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee." *Id*. "The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist." *Id*. However, "[d]efenses presented which, under all the circumstances, are unsupported by any evidence, are unreasonable, or are presented in bad faith, will preclude a finding of a 'good faith dispute.'" *Id*.

Defendant contends that a good faith dispute exists because "the statutes, regulations, and cases that govern the calculation of an employee's regular rate of pay suggest that payments like the Bravo prizes are properly excluded from the regular rate, as both the fact that the payments were made in the amount of the payments were matters of Office Depot's sole discretion." Motion at 15:10-14. Defendant asserts that Office Depot's decision not to factor the value of the Bravo Awards into plaintiff's regular rates was based on a reasonable, good-faith interpretation of the applicable law.

9

1    The Court finds that defendant has not demonstrated that it is entitled to summary judgment on
2 this ground. Neither party has submitted any evidence regarding the reasonableness of Office Depot's
3 decision not to factor Bravo awards into the regular rate of pay, and thus the Court cannot conclude on
4 this record that a good faith dispute exists.

5    Defendant also moves for summary judgment on the ground that the amount of waiting time
6 penalties purportedly owed to plaintiff is unconstitutional. Section 203 provides for a penalty of up to
7 thirty days continued wages for any willful failure to pay wages owed at the time of termination. Cal.
8 Labor Code § 203(a). Defendant asserts that the amount of unpaid overtime at issue is $.23, and that
9 the purportedly owed waiting time penalties is unconstitutionally excessive ($2,016, assuming an eight
10 hour workday or $1,008, assuming a four-hour workday). Defendant cites cases for the proposition that
11 a statutory penalty violates due process where "'the penalty prescribed is so severe and oppressive as
12 to be wholly disproportioned to the offense and obviously unreasonable.'" *United States v. Citrin*, 972
13 F.2d 1044, 1051 (9th Cir. 1992) (quoting *St. Louis, Iron Mt. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66-
14 67 (1919)).

15    Plaintiff argues that the possibility of excessive damage award does not provide defendant with
16 a defense to liability and that the Court need not resolve this question at this time. The Court agrees.
17 Prior to a determination of defendant's liability, it is premature to analyze whether the potential penalty
18 owed is unconstitutional. The Court has not held that defendant "willfully" withheld wages, nor has the
19 Court precluded the possibility of a finding of a good faith dispute. Accordingly, the Court denies
20 defendant's motion on this ground without prejudice to renewal in the event defendant is found liable.

22    **E.    Failure to provide accurate wage statements**

23    Plaintiff alleges Office Depot violated California Labor Code Section 226 because the wage
24 statements he received during his employment did not reflect the additional overtime due to him as a
25 result of winning Bravo Awards. Defendant moves for summary judgment on this claim, contending
26 that Section 226 does not create a penalty for nonpayment or late payment of wages, but rather simply
27 requires that employers accurately describe the monies that are being paid "at the time of each payment
28 of wages." Cal. Labor Code § 226(a). As support, defendant cites a DLSE opinion letter, which states

10

1  that the purpose of Section 226 "is to provide transparency as to the calculation of wages" and "to allow
2  employees to maintain their own records of wages earned, deductions, and pay received"). *See*
3  2006.07.06 DLSE Opinion Letter at 2. Plaintiff responds that wage statements violate Labor Code
4  Section 226 when they do not state the correct amount of wages "earned," and that this section does not
5  simply impose the requirement to accurately state the correct amount of wages actually paid.

6        The plain language of Section 226 requires that wage statements set forth the correct amount of
7  wages "earned" by employees. Contrary to defendant's assertions, it is not obvious from either the
8  language of Section 226 or the DLSE Opinion Letter that Section 226 simply requires a statement of
9  the wages actually paid to an employee where there is a dispute regarding whether overtime pay was
10 earned. In the absence of on point authority supporting defendant's interpretation of Section 226, the
11 Court declines to adopt defendant's construction.

12       Defendant also contends that it is entitled to summary judgment on this claim because plaintiff
13 testified at his deposition that he was not harmed as a result of receiving inaccurate wage statements.
14 Plaintiff asserts that a review of his deposition testimony shows that he made no such concession, and
15 that plaintiff's deposition testimony is not inconsistent with the statement in plaintiff's declaration in
16 which he stated that as a result of the inaccurate wage statements he could not determine the correct
17 amount of overtime wages owed. The Court finds that whether or not plaintiff suffered an injury as a
18 result of receiving allegedly inaccurate wage statements is a disputed question of fact, and therefore that
19 summary judgment on this ground is not appropriate.

20       Finally, defendant contends that there is no evidence of a knowing and intentional violation of
21 Section 226 because there is a good faith dispute as to whether the Bravo Award should be included in
22 the regular rate calculation. For the reasons set forth above, the Court finds that the record is
23 insufficient to grant summary judgment on this ground.

## II. Plaintiff's motion for class certification

Plaintiff seeks classification of the first through fourth claims for relief. For the failure to pay overtime wages, failure to provide accurate wage statements, and UCL claims, plaintiff seeks to certify the following class:

11

> All persons who, at any time since [January 19, 2008 for the overtime wage claim; January 19, 2010 for the failure to provide accurate wage statements claim; and January 19, 2007 for the UCL claims] worked in California as a non-exempt employee of Defendant and earned a Bravo Award bonus for a month in which the employee worked more than eight hours in a workday or more than forty hours in a workweek.

For the failure to pay wages upon termination claim, plaintiff seeks to certify the following class:

> All persons whose employment with Defendant ended at any time since January 19, 2008 who worked in California as a non-exempt employee of Defendant and earned a Bravo Award bonus for a month in which the employee worked more than eight hours in a workday or more than forty hours in a workweek.

Plaintiff seeks appointment as the representative for all the classes, and plaintiff's counsel Gregory N. Karasik seeks appointment as class counsel.

### A.    Rule 23(a)

#### 1.    Numerosity

According to defendant, as of July 30, 2011 there were 5,940 Bravo Awards since January 2007, 4,958 awards since January 2008, and 2,672 awards since January 2010. Karasik Decl. ¶ 3, Ex. B. Defendant has stipulated to numerosity for purposes of class certification, *id.* at ¶ 4, and the Court finds that plaintiff has established this element.

The proposed classes are also readily ascertainable from both defendant's records and by potential class members themselves. Because defendant has the ability to identify which employees won Bravo Awards, a notice can be sent out to all winners, asking them to identify whether they are in the class. *Id.* Ex. B at 54. Defendant also has the ability to determine whether or not an employee worked overtime hours during any month. *Id.* The list of employees who have won Bravo Awards and the list of employees who worked overtime can be cross-referenced to find all class members. Accordingly, the Court finds that the proposed classes are readily ascertainable.

#### 2.    Commonality

Defendant contends that plaintiff cannot establish Rule 23(a) commonality. "Commonality requires the plaintiff to demonstrate that class members 'have suffered the same injury[.]' [internal citations omitted]. This does not mean merely that they have all suffered a violation of the same provision of law." *Dukes*, 131 S. Ct. at 2551. "Their claims must depend upon a common

12

contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.

Here, all of class members' claims revolve around the central contention that defendant was required to factor Bravo Awards into the calculation of their regular rate of pay for the purposes of computing overtime. Plaintiff asserts that "[s]ince there is no factual dispute about how the Bravo Award Program operates, whether or not defendant was required to factor Bravo Awards into the calculation of the regular rate of pay presents a purely legal question that is clearly capable of classwide resolution." Plf. Mot. For Class Certification at 5.

Defendant counters that because each store operates differently in terms of how often Bravo Cards are awarded, any determination as to whether Bravo Awards are discretionary must be made on an employee-by-employee basis, making class adjudication unsuitable for this case. Defendant emphasizes the fact that employees had no expectation of receiving Bravo Cards, the contingent nature of winning a Bravo Award, and the fact that the timing and occurrence of the drawings themselves varied by facility. According to defendant, the above factors make each prospective class members' experience in receiving a Bravo Award so disparate from the others that class adjudication is not warranted.

The Court disagrees. Plaintiff defines all four classes in this case to include only those employees who have received a Bravo Award. The slight variance in the procedure for receiving those awards is irrelevant to determining whether defendant should have included the Bravo Awards in calculating the regular rate of pay for purposes of overtime compensation. Similarly, because it is undisputed that Bravo Awards were never included in the calculation of the regular rate of pay, whether defendant willfully withheld wages or whether there is a good faith dispute can also be determined on a classwide basis. The fact that Bravo Awards may have been more difficult to win at certain facilities than others does not affect the class claims alleged here. The Court finds that the prospective class members raise claims based on a "common contention . . . such that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131

S. Ct. at 2551. Accordingly, the Court finds that plaintiff has satisfied the commonality element of Rule 23(a).

### C. Typicality

Rule 23(a)(3) requires that the representative plaintiff have claims "typical of the claims . . . of the class." FRCP 23(a)(3). Defendant does not dispute that plaintiff's claims are typical, and the Court finds that plaintiff has established this element.

### D. Adequate Representation

Rule 23(a)(4) permits class certification only if "the representative parties will fairly and adequately protect the interests of the class." Adequate representation requires the class representatives to "prosecute the action vigorously on behalf of the class," and to avoid conflicts of interest with other class members. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Defendant argues that plaintiff is not an adequate representative of the class for three reasons. First, defendant argues that plaintiff cannot represent the class because he is not familiar with Office Depot policies at other facilities, does not know of any other Office Depot employee who supports him bringing this lawsuit, and does not know if any other employee was injured by Office Depot's policy. Second, defendant argues that the fact that plaintiff is subject to unique defenses (specifically a *de minimis* defense) renders him incapable of adequately representing the class. Finally, defendant argues that plaintiff's credibility is severely compromised because he arrived at his deposition unable to provide testimony due to medication he had taken that morning.

The Court is not persuaded by these arguments. The fact that plaintiff is not aware of Office Depot policies at other facilities or of others employees who may have been injured does not suggest that plaintiff has a conflict of interest with other class members, nor does it prevent plaintiff from vigorously prosecuting the class. Second, as discussed *supra*, the Court finds that plaintiff is not subject to the *de minimis* defense. Finally, the fact that plaintiff could not answer questions at his first deposition date due to medical issues does not diminish his credibility as a class representative. The Court finds plaintiff an adequate class representative.

**II.     Rule 23(b)**

Having satisfied the Rule 23(a) requirements, plaintiff must satisfy one of the three prongs of Rule 23(b). Plaintiff seeks certification under Rule 23(b)(3) which requires showing that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. Proc. 23(b)(3).

**A.     Predominance**

Plaintiff must establish that common questions of law or fact predominate for each claim in which he seeks to certify a class. The Court finds that this requirement is met because the claims for which plaintiff seeks certification hinge on whether defendant was required to include Bravo Awards in employees' regular rate of pay to calculate overtime.

Defendant contends that determination of the overtime rate would be individualized to each employee for each Bravo Award. However, "[t]he amount of damages is invariably an individual question and does not defeat class action treatment." *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975). Defendant also argues that the Court should not certify plaintiff's waiting time penalties claim under Cal. Labor Code § 203 because each individual penalty "is unconstitutionally confiscatory." Def's. Opp'n. at 22. As discussed supra, the Court finds that it is premature to decide whether potential penalties in this case would be unconstitutional, and in any event this issue does not defeat predominance.

Finally, defendant argues that individual issues predominate with regard to plaintiff's claim regarding inaccurate wage statements because Labor Code Section 226(e) requires a showing of injury. For certification plaintiff must show that class members suffered the same injury as a result of receiving non-complaint wage statements. "The injury requirement in section 226, subdivision (e), cannot be satisfied simply if one of the nine itemized requirements in section 226, subdivision (a) is missing from a wage statement." *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1142 (2011). "By employing the term 'suffering injury,' the statute requires that an employee may not recover for violations of section 226, subdivision (a) unless he or she demonstrates an injury arising from the missing information.

15

[internal citations omitted] Thus, the deprivation of that information, standing alone is not a cognizable injury." *Id*. at 1142-43. However, a "mathematical injury that requires computations to analyze whether the wages paid in fact compensated [the employee] for all hours worked" is sufficient to establish injury. *Id*. (citing *Jaimez v. DAIOHS USA, Inc*., 181 Cal. App. 4th 1286, 1306 (2010) ). "While there must be some injury in order to recover damages [under § 226(e)], a very modest showing will suffice." *Jaimez*, 181 Cal. App. 4th at 1306; *see also Elliot v. Spherion Pac. Work, LLC*, 572 F. Supp. 2d 1169, 1181 (C.D. Cal. 2008) (injuries under § 226(e) include "possibility of not being paid overtime, employee confusion over whether they received all wages owed them, difficulty and expense involved in reconstructing pay records, and forcing employees to make mathematical computations to analyze whether the wages paid in fact compensated them for all hours worked.").

Plaintiff contends that all class members suffered from the "same inability to determine, from the wage statements owed to them by defendant when they won Bravo Awards, the correct amount of overtime wages owed to them, and they thus had a resulting need to engage in discovery and mathematical calculation to determine exactly how much in overtime wages they were owed." Plf's. Mot. at 10. By alleging a "mathematical injury" and the possibility that prospective class members have not received all wages owed to them, plaintiff has made the "modest showing" required under § 226(e).

### B.     Superiority

Under Rule 23(b)(3) plaintiff must also show "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. Proc. 23(b)(3). "Typically, a class action is superior if the case presents a large volume of individual claims that could strain judicial resources if tried separately and if each potential plaintiff's recovery may not justify the cost of individual litigation." *McKenzie v. Fed. Exp. Corp*., 275 F.R.D. 290, 301 (C.D. Cal. 2011). Courts will look to the following factors listed in Rule 23(b)(3) when determining superiority: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. Proc. 23(b)(3).

Here, all of these factors lead the Court to conclude that a class action is superior to any other method of adjudication in this case. All of the prospective class claims revolve around a question of law common to all prospective class members – whether defendant should have included Bravo Awards in class member's regular rate of pay when computing overtime pay. The Court is not aware of any prospective class member's individual interest in controlling prosecution of separate actions, or of any litigation concerning the issues at hand other than this case. Finally, managing this case as a class action will be far easier than addressing all of the prospective class member's claims individually. Each prospective class member would allege the same set of common facts to answer the same question of law. Class adjudication of this question of law is markedly more efficient than addressing it individually for each class member. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

## CONCLUSION

For the reasons set forth above, the Court DENIES defendant's motion for summary judgment and GRANTS plaintiff's motion for class certification. Docket Nos. 31 and 42. The Court GRANTS plaintiff's motion to strike defendant's unauthorized separate statement of facts. *See* Civ. Local Rule 56-2. Docket No. 49-1.

Plaintiff's motion for class certification did not include a proposed notice to be sent to the class. The parties are directed to meet and confer regarding the form of notice, and to submit the proposed notice to the Court within 14 days of the filing date of this order.

**IT IS SO ORDERED.**

Dated: July 6, 2012

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE