1  Gregory N. Karasik (SBN 115834)
   greg@karasiklawfirm.com
2  **Karasik Law Firm**
   11835 W. Olympic Blvd. Ste. 1275
3  Los Angeles, CA 90064
   Tel (310) 312-6800
4  Fax (310) 943-2582

5  Alexander I. Dychter (SBN 234526)
   alex@dychterlaw.com
6  **Dychter Law Offices, APC**
   1010 Second Ave., Suite 1835
7  San Diego, California 92101
   Tel: (619) 487-0777
8  Fax: (619) 330-1827

9  Attorneys for Plaintiff
   HOWARD DAVID PROVINE
10

11                  UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD DAVID PROVINE, individually and on behalf of other persons similarly situated,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>OFFICE DEPOT, INC. and DOES 1 through 10,<br><br>　　　　　　Defendants. | Case No. CV 11-00903 SI<br><br>CLASS ACTION<br><br>**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: November 1, 2013<br>Time: 9:00 a.m.<br>Ctrm: 10 – 19th Floor |

　　　　Please take notice that, on November 1, 2013, at 9:00 a.m. or as soon thereafter as counsel may be heard, in Courtroom 10 of the United States Courthouse, located at 450 Golden Gate Avenue, San Francisco, California, plaintiff Howard David Provine ("Plaintiff") will and hereby does move the Court for an order granting final approval of the class action settlement (the "Settlement") reached with defendant Office Depot, Inc. ("Defendant") that was preliminarily approved by the Court on June 17, 2013. Specifically, Plaintiff moves for an order:

1. Granting final approval of the Settlement, and finding the terms of the Settlement to be fair, reasonable and adequate under Rule 23(e) of the Federal Rules of Civil Procedure, including the amount of the settlement fund; the amount of distributions to class members; the procedure for giving notice to class members; the procedure for objecting to or opting out of the Settlement; and the maximum amounts allocated to an incentive payment, costs and attorney's fees.

2. Certifying for settlement purposes the Settlement Class described in the Settlement, comprised of all persons who are and/or were employed as non-exempt employees by Defendant in California, who received a Bravo payment after January 19, 2007 but before September 1, 2012, and who worked more than one minute of overtime during the calendar month preceding the Bravo payment.

3. Finding that class members were provided proper and adequate notice of their rights in a manner that satisfies the requirements of due process.

4. Directing that all class members who did not timely file an Exclusion Form are barred from prosecuting against the Released Parties any and all released claims as set forth in the Settlement.

5. Directing payment from the settlement fund of settlement administration fees to CPT Group, Inc. in the amount of $22,000 in accordance with the Settlement.

6. Directing payment from the settlement fund of settlement benefits to class members who did not timely request exclusion from the Settlement, in accordance with the Settlement.

7. Entering a final judgment dismissing the action with prejudice.

8. Providing that, notwithstanding entry of final judgment, the Court shall retain jurisdiction in this matter for the purposes of interpreting or enforcing the Settlement or final judgment.

Plaintiff's motion is made under Rule 23 of the Federal Rules of Civil Procedure on the grounds that the Settlement is fair, reasonable and adequate; in accordance with due process, class members were provided notice of their rights under the Settlement in a reasonable manner and were given a reasonable opportunity to exclude themselves from the Settlement.

Plaintiff's motion is based on this Notice and attached Memorandum of Points and Authorities, the Declarations of Gregory N. Karasik and Abel Morales submitted herewith; all other pleadings and

papers on file in this action; and any oral argument or other matter that may be considered by the Court.

Dated: October 8, 2013

          KARASIK LAW FIRM
          DYCHTER LAW OFFICES, APC

By: /s/ Gregory N. Karasik
     Gregory N. Karasik
     Attorneys for Plaintiff

Gregory N. Karasik (SBN 115834)
greg@karasiklawfirm.com
**Karasik Law Firm**
11835 W. Olympic Blvd. Ste. 1275
Los Angeles, CA 90064
Tel (310) 312-6800
Fax (310) 943-2582

Alexander I. Dychter (SBN 234526)
alex@dychterlaw.com
**Dychter Law Offices, APC**
1010 Second Ave., Suite 1835
San Diego, California 92101
Tel: (619) 487-0777
Fax: (619) 330-1827

Attorneys for Plaintiff
HOWARD DAVID PROVINE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD DAVID PROVINE, individually and on behalf of other persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>OFFICE DEPOT, INC. and DOES 1 through 10,<br><br>Defendants. | Case No. CV 11-00903 SI<br><br>CLASS ACTION<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: November 1, 2013<br>Time: 9:00 a.m.<br>Ctrm: 10 – 19th Floor |

# TABLE OF CONTENTS

INTRODUCTION AND LITIGATION HISTORY ..................................................................1

SUMMARY OF SETTLEMENT TERMS..................................................................................2

ARGUMENT ...................................................................................................................................3

I.    THE SETTLEMENT MERITS FINAL APPROVAL ..................................................3

    A.    The Strength Of Plaintiff's Case..........................................................................3

    B.    The Risk, Expense, Complexity And Likely Duration Of Further Litigation ........5

    C.    The Risk Of Maintaining Class Action Status......................................................6

    D.    The Amount Offered In Settlement .....................................................................6

    E.    The Extent Of Discovery Completed And The Stage Of The Proceedings ............6

    F.    The Experience And Views Of Counsel................................................................7

    G.    The Reaction Of Class Members To The Settlement ..........................................7

CONCLUSION..................................................................................................................................7

# TABLE OF AUTHORITIES

Cases

*Class Plaintiffs v. Seattle*
   (9th Cir. 1992) 955 F.2d 1268 ................................................................................ 4

*Hanlon v. Chrysler Corp.*
   (9th Cir. 1998) 150 F.3d 1011 ................................................................................ 3

*In re Cedant Corp., Derivative Action Litigation*
   (D. N.J. 2002) 232 F.Supp.2d 327 .......................................................................... 5

*In re Immune Response Securities Litigation*
   (S.D. Cal. 2007) 497 F.Supp.2d 1166 ..................................................................... 6

*In re Lifelock, Inc. Marketing and Sales Practices Litigation*
   (D. Ariz. 2010) 2010 WL 3715138 ......................................................................... 7

*Linney v. Cellular Alaska Partnership*
   (N.D. Cal. 1997) 1997 WL 450064 ........................................................................ 6

*Molski v. Gleich*
   (9th Cir. 2003) 318 F.3d 937 .................................................................................. 3

*Nat'l Rural Telecommons. Coop v. DirectTV, Inc.*
   (C.D. Cal. 2004) 221 F.R.D. 523 ............................................................................ 6

*Reynolds v. National Football League*
   (8th Cir. 1978) 584 F.3d 280 .................................................................................. 7

*Van Bronkhorst v. Safeco Corp.*
   (9th Cir. 1976) 529 F.2d 943 .................................................................................. 3

*Vasquez v. Coast Valley Roofing, Inc.*
   (E.D. Cal. 2010) 266 F.R.D. 482 ........................................................................ 3,7

*West v. Circle K. Stores, Inc.*
   (E.D. Cal. 2006) 2006 U.S. Dist. LEXIS 767558 .................................................. 7

## FEDERAL RULES OF CIVIL PROCEDURE

Rule 23(e)(2) ................................................................................................................ 3

Rule 23(h) .................................................................................................................... 2

## STATE STATUTES

Labor Code Section 203 ............................................................................................. 1

Labor Code Section 226 ............................................................................................. 4

## INTRODUCTION & LITIGATION HISTORY

Plaintiff contends that Defendant failed to factor into the calculation of the regular rate of pay for non-exempt employees, for the purposes of determining the amount of overtime wages owed to them, amounts they received for a Bravo Award bonus. Based on this central allegation, Plaintiff filed a class action lawsuit to recover unpaid overtime wages for Bravo Award winners who worked overtime and, on behalf of former employees, waiting time penalties under Labor Code Section 203.

Plaintiff filed his complaint on January 19, 2011 in state court. Defendant thereafter removed the case to federal court and Plaintiff filed a First Amended Complaint on July 19, 2011. After substantial written discovery and depositions, the Court on July 6, 2012 granted Plaintiff's motion for class certification and denied Defendant's motion for summary judgment. Defendant thereafter filed a petition with the Ninth Circuit Court of Appeals seeking permission to pursue an interlocutory appeal from the Court's order granting class certification. (Karasik Final App. Decl. ¶ 6).

While that petition was pending, the parties on June 7, 2012 participated in a private mediation before mediator Jeff Krivis. The mediation resulted in an agreement on the material terms of a class action settlement, pursuant to which Defendant agreed to a stay of its petition in the Ninth Circuit pending settlement approval and withdrawal of the petition after approval. After further negotiations regarding settlement details, the parties eventually formalized the settlement (Karasik Final App. Decl. ¶ 7).

Pursuant to the Settlement, Defendant will pay on a non-reversionary basis the Gross Settlement Amount of $350,000. Each member of the Settlement Class is entitled to a share of $9,000 (more than Defendant's alleged liability for unpaid overtime wages) based on the number of Bravo payments received during the class period, and each person in the Settlement Class employed after January 19, 2008 whose employment ended before September 1, 2012 (the "Former Subclass") is entitled to an equal share of the Net Settlement Amount remaining after all deductions are made from the Gross Settlement Amount. Class members need not submit claims to receive settlement benefits and each member of the Former Subclass will receive, in addition to the settlement benefits allocated to unpaid wages payable to all members of the Settlement Class, a payment of more than $120 allocated to waiting time penalties. (Karasik Final App. Decl. ¶ 15).

1
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

On June 17, 2013, the Court granted Plaintiff's motion for preliminary approval of the Settlement and the Settlement Administrator thereafter mailed out notice of the Settlement to 3,219 class members. In accordance with the Court's order, Plaintiff on August 16, 2013 moved under Rule 23(h) of the Federal Rules of Civil Procedure for an order awarding attorney's fees, costs and an enhancement payment in connection with final approval of the Settlement. In response, not a single class member has objected to the Settlement and only 40 class members (1.24% of the class) have requested exclusion from the Settlement. (Karasik Final App. Decl. ¶ 9).

Now that the deadline for class members to respond to notice of the Settlement has passed, Plaintiff moves for final approval of the Settlement. Since no objections have been made to the Settlement, only a minute fraction of class members have requested exclusion from the Settlement, and the Settlement is fair, reasonable and adequate, the Court should grant final approval of the Settlement and enter a final judgment that also incorporates the Court's order granting Plaintiff's motion for an award of attorney's fees, costs and enhancement payment.

## SUMMARY OF SETTLEMENT TERMS

The material terms of the Settlement are as follows:

- The Settlement Class is comprised of all persons who are and/or were employed as non-exempt employees by Office Depot in California, who received a Bravo payment after January 19, 2007 but before September 1, 2012 and who worked more than one minute of overtime during the calendar month preceding the Bravo payment [approximately 3,219 persons].
- The Settlement Class includes a Former Subclass comprised of Class Members who were employed after January 19, 2008 and whose employment terminated prior to September 1, 2012 [approximately 1,338 persons].
- Defendant will pay the Gross Settlement Amount of Three Hundred Fifty Thousand Dollars ($350,000) in exchange for a release of class member claims.
- Each member of the Settlement Class is entitled to a share of $9,000 in proportion to the relative percentage of Bravo payments received by that member of the Settlement Class during the class period.

- After deductions are made from the Gross Settlement Amount for the $9,000 payable to all class members, settlement administration expenses, attorney's fees and costs, an enhancement award to Plaintiff, payroll taxes, and a payment of $5,000 to the Labor Workforce Development Agency, an equal share of the remaining funds ("the Net Settlement Amount") will be distributed to each person in the Former Subclass.
- Defendant will not oppose an application by Plaintiff for an award of costs of up to $15,000 or an award of attorney's fees up to $140,000 (40% of the Gross Settlement Amount).
- Defendant will not oppose an application by Plaintiff for an enhancement of up to Five Thousand Dollars ($5,000).

## ARGUMENT

### I. THE SETTLEMENT MERITS FINAL APPROVAL

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cots, and rigors of formal litigation. *Van Bronkhorst v. Safeco Corp.* (9th Cir. 1976) 529 F.2d 943, 950.

Rule 23(e)(2) of the Federal Rules of Civil Procedures provides that a court may approve a settlement of a class action when it finds that the settlement is "fair, reasonable, and adequate." The following factors are relevant to this determination: 1) the strength of the plaintiff's case; 2) the risk, expense, complexity, and likely duration of further litigation; 3) the risk of maintaining class action status throughout the trial; 4) the consideration offered in settlement; 5) the extent of discovery completed, and the stage of the proceedings; 6) the experience and views of counsel; and 7) the reaction of the class to the proposed settlement. *Molski v. Gleich* (9th Cir. 2003) 318 F.3d 937, 953; *Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1026. In this case, each of these factors weighs in favor of granting final approval to the Settlement.

### A. The Strength Of Plaintiff's Case

Assessing the strength of a plaintiff's case involves weighing the merits against the settlement amount and potential recovery. *Van Bronkhorst*, 529 F.2d at 950. *See also, Vasquez v. Coast Valley Roofing, Inc.* (E.D. Cal. 2010) 266 F.R.D. 482, 488. A district court need not, however, "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute,

for it is the very uncertainty of outcome in the litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Class Plaintiffs v. Seattle* (9th Cir. 1992) 955 F.2d 1268, 1291.

Here, the Settlement provides a recovery for class members of more than 100% of the value of their claims for unpaid overtime wages! According to Defendant, its alleged liability for unpaid overtime wages for all class members combined was less than $9,000 (or less than $3.00 per class member). Here, each member of the Settlement Class will receive the full amount of his or her allegedly unpaid overtime wages. (Karasik Final App. Decl. ¶ 11).

With respect to Plaintiff's claims for waiting time penalties, Plaintiff's counsel estimated that Defendant faced potential liability of approximately $3,200,000. Thus, the Settlement provides a recovery for members of the Former Subclass of approximately 10% of the value of their claims for waiting time penalties. (Karasik Final App. Decl. ¶ 12). Under the circumstances of this case, that is also an excellent result. Although Plaintiff obtained class certification, Plaintiff faced two significant hurdles with respect to his claims for waiting time penalties.

First, Defendant contends that its good faith belief that Bravo Awards are discretionary precludes a finding of "willfulness" as required for recovery of any waiting time penalties.[1] Although the Court denied Defendant's motion for summary judgment based on this argument, the Court only did so because Defendant failed to present any evidence regarding its beliefs. At trial, Defendant would presumably have had a representative testify on this subject. Thus, notwithstanding denial of summary judgment, Plaintiff faced a significant risk of losing on the merits with respect to his claims for waiting time penalties. (Karasik Final App. Decl. ¶ 13).

Second, Defendant had a strong argument that any significant award of waiting time penalties based on a nominal amount of unpaid overtime wages would violate due process. When the Court denied Defendant's motion for summary judgment, the Court ruled that it was premature to consider Defendant's due process arguments prior to an actual damage award. Thus, even if Plaintiff obtained

---

[1] Defendant had even stronger arguments against Plaintiff's claims for civil penalties under Labor Code Section 226, which require a showing of "knowing" and "intentional" misconduct. Thus, Plaintiff's claims for civil penalties had little value. Plaintiff's claims for PAGA penalties likewise had only nominal value. (Karasik Final App. Decl. ¶ 13, n.1).

an award of waiting time penalties after trial, Plaintiff faced the likelihood of a significant reduction in those penalties after trial. (Karasik Final App. Decl. ¶ 14).

Ultimately, Plaintiff obtained a recovery of waiting time penalties in an amount per class member (more than $120) that is approximately 40 times greater than the amount of the unpaid wages per class member (less than $3) giving rise to the waiting time penalties. In the view of Plaintiff's counsel, that is an excellent result. Based on their experience, Plaintiff's counsel believe the ratio of waiting time penalties to unpaid wages in this case far exceeds the ratio of waiting time penalties to unpaid wages typically recovered in class action settlements. Plaintiff's counsel, who have negotiated more than 50 class action settlements, know of many settlements where derivative claims for waiting time penalties under Labor Code Section 203 ultimately had little or no value. (Karasik Final App. Decl. ¶ 15). In light of the risks and uncertainty of continued litigation with respect to Plaintiff's derivative claims for waiting time penalties, Plaintiff's recovery of more than $120 per class member on those claims, even though only about 10% of the potential value of those claims, reflects not just a fair settlement well within the range of reasonable outcomes that merits approval but a superior result, *see, In re Cedant Corp., Derivative Action Litigation* (D. N.J. 2002) 232 F.Supp.2d 327 (approving settlement which provided 2% value compared to maximum possible recovery).

**B.     The Risk, Expense, Complexity And Likely Duration Of Further Litigation**

Continued litigation of this case would have exposed Plaintiff to substantial expense and risk. Although the Court denied Defendant's motion for summary judgment, Defendant would likely have taken an appeal from a final judgment. Moreover, Defendant filed a petition to appeal from the Court's order granting class certification. Thus, even though class certification had been granted, Plaintiff still ran the risk of decertification on appeal. Plaintiff further risked the possibility of case developments that would have given Defendant grounds to file a motion for decertification.

In addition, the Court only denied Defendant's summary judgment motion with respect to Plaintiff's claims for waiting time penalties because Defendant failed to support its position with evidence and the Court deemed Defendant's constitutional arguments premature. It remained to be seen whether Plaintiff would actually prevail on his waiting time claims at trial and, if so, whether or to what extent Defendant would have achieved a reduction in the amount of waiting time penalties in

order to comport with due process limitations. The prospect of "lengthy and expensive litigation with uncertain results" clearly supports settlement. *See, Nat'l Rural Telecommons. Coop v. DirectTV, Inc.* (C.D. Cal. 2004) 221 F.R.D. 523, 526.

### C. The Risk Of Maintaining Class Action Status

Although the Court granted Plaintiff's motion for class certification, Defendant filed a petition with the Ninth Circuit for permission to appeal from that ruling. At the time the Settlement was reached, that petition was still pending and it remained to be seen how the Ninth Circuit would have ruled on that petition in the absence of settlement. Moreover, orders granting class certification are never final until a final judgment is reached, and the possibility remained that factual or legal developments would have provided Defendant grounds for filing a motion for decertification. Thus, despite the Court's order granting class certification, Plaintiff still faced the risk that he would not be able to maintain class action status through a final judgment.

### D. The Amount Offered In Settlement

As discussed above, the Settlement will result in class members getting the full amount of unpaid overtime wages allegedly owed to them (which was only about $3.00 a class member), and formerly employed class members will also get approximately $120 each for waiting time penalties, more than 40 times the amount of their allegedly unpaid wages. Under the circumstances of this case, Plaintiff achieved a truly superior result by negotiating a non-reversionary Settlement with a Gross Settlement Amount of $350,000.

### E. The Extent Of Discovery Completed And The Stage Of The Proceedings

Approval of a class action settlement does not require that discovery be exhaustive or that the parties engage in formal discovery procedures. *See, e.g. In re Immune Response Securities Litigation* (S.D. Cal. 2007) 497 F.Supp.2d 1166, 1174 (settlement approved where informal discovery gave the parties "a clear view of the strength and weaknesses of their cases"). The fact that settlement results from arms length negotiations following "relevant discovery" creates "a presumption that the agreement is fair." *Linney v. Cellular Alaska Partnership* (N.D. Cal. 1997) 1997 WL 450064 at *5.

Here, the parties engaged in a substantial amount formal discovery and motion practice. After written discovery and depositions, Plaintiff moved for class certification and Defendant moved for

summary judgment. The substantial discovery taken by the parties and the rulings by the Court on the parties class certification and summary judgment motions negotiations clearly enabled the parties and their counsel to formulate "a clear view of the strengths and weaknesses of their cases," strongly supports final approval.

### F. The Experience And Views Of Counsel

The opinions of experienced class counsel are entitled to "considerable weight." *West v. Circle K. Stores, Inc.* (E.D. Cal. 2006) 2006 U.S. Dist. LEXIS 767558, *17-18. *See also, Vasquez v. Coast Valley Roofing, Inc.* (E.D. Cal. 2010) 266 F.R.D. 482, 489 (courts should give great weight to counsel's recommendations).

Plaintiff's counsel has substantial experience litigating class actions in general and wage and hour class actions in particular. The opinion of Plaintiff's counsel that the Settlement is fair and reasonable, and that final approval of the Settlement would best serve the interests of class members because the extremely favorable result achieved by the Settlement outweighs the risks and uncertainty of continued litigation, weighs strongly in favor of final approval.

### G. The Reaction Of Class Members To The Settlement

Only 40 class members (1.24% of the class) have opted out of the Settlement and not a single class member has objected to the Settlement. (Karasik Final App. Decl. ¶ 10). These facts demonstrate an overwhelmingly positive response to the Settlement that strongly supports final approval. *See, e.g., Reynolds v. National Football League* (8th Cir. 1978) 584 F.3d 280 (16 objectors out of 5,400 class members provided strong evidence of no significant dissatisfaction with settlement); *In re Lifelock, Inc. Marketing and Sales Practices Litigation* (D. Ariz. 2010) 2010 WL 3715138, *6 (relatively few objections and requests for exclusion support approval).

### CONCLUSION

The Settlement in this case, reached after lengthy and hard fought litigation, is fair, adequate and reasonable. Class members were given notice of their rights in a manner that comports with due process and the Settlement provides class members with significant value on their claims for unpaid overtime wages (more than 100% of the amount allegedly owed) and waiting time penalties (more than

1 | 40 times the amount of unpaid wages). Plaintiff respectfully requests that final approval of the
2 | Settlement be granted.

3 | Dated: October 8, 2013

KARASIK LAW FIRM
DYCHTER LAW OFFICES, APC

By: /s/ Gregory N. Karasik
Gregory N. Karasik
Attorneys for Plaintiff